In re the MARRIAGE OF Mary DELGADO, Petitioner-Appellant,

and

Cruz Delgado, Respondent-Appellee.

No. 3–1280A386.

Court of Appeals of Indiana,
Third District.

Jan. 5, 1982.

R. Cordell Funk, Smith & Funk, Hammond, for petitioner-appellant.

Marvin E. Silverman, Ottenheimer, Silverman & Meinzer, East Chicago, for respondent-appellee.

GARRARD, Judge.

On June 10, 1980 the marriage of Mary and Cruz Delgado was dissolved by the Lake County Superior Court and the parties' marital property was divided by the dissolution decree. Mary now appeals from that property division decreed by the court. We affirm.

The parties were married in 1948 when the husband, Cruz Delgado, was 39 years old and the wife, Mary Delgado, was 18 years old. Cruz had been previously married and had a ten year old son. During their marriage Cruz and Mary had two children, a son who died in an accident at age 21 and a daughter who was married at the time of the parties' divorce. Cruz retired in 1974 from his job at the Inland Steel Company, where he had been employed through the duration of his marriage to Mary. Mary was not employed outside the home during the marriage.

When they married in 1948 the parties had no significant assets. At the time of their divorce their assets included a residence valued at $42,000, miscellaneous household furniture, a Kentucky residence valued at $2,000, Inland Steel stock valued at $19,000 with two accrued dividend checks totalling $628, U.S. Savings Bonds valued at $2,125, another bond worth $750, certifi-

cates of deposit worth $6,500, bank accounts totalling over $4,000, a credit union account of $1,494, a 1974 Mercury Comet, state and federal tax refunds of $480, and two cemetery lots. Also, Cruz was receiving $700 a month in retirement benefits from Inland Steel Co. and $448 a month in Social Security benefits.

In the dissolution decree the court ordered that the parties hold their family residence as tenants in common. The wife was awarded an undivided ⅔ interest in the residence (a value of $28,000). The husband was awarded an undivided ⅓ interest in the residence (a $14,000 value). While the husband was prohibited from partitioning the real estate, if the wife remarried or sold the house the husband would be entitled to one third of the net proceeds from that sale.

The husband also was awarded the automobile,[1] his personal clothing and effects, $1,390 from the bank accounts, the Kentucky property, one half of the Inland Steel stock worth $9,500, and $1,494 from a credit union.

In addition to her two thirds interest in the house, the wife was awarded all the household furniture, one half of the Inland Steel stock, certificates of deposit worth $6,500, savings bonds worth $2,875, and a savings account worth $850.

We note that the parties, in their briefs, have ascertained different total values for the assets divided under the decree. If the husband's pension rights are excluded, the wife's calculations show her receiving 58% of the property and the husband 42%. In the husband's brief the division of property shows the wife receiving 62% of the property and the husband 37% when the pension rights are not placed in the calculation. Under either calculation, the wife received more than one half of the marital property.

The wife argues on appeal that the trial court failed to equitably divide the marital property. She makes two assertions of error. The wife argues that the husband's retirement benefits were a marital asset and that the court should have awarded her a share of those benefits. In the alternative, the wife contends that in dividing the property the court should have considered the husband's retirement benefits from Inland Steel and that such a consideration should have resulted in her being entitled to a larger portion of the assets; namely, all of the Inland Steel stock and the entire marital residence.

In a dissolution of marriage action, IC 31–1–11.5–11(a) (West 1979) requires a court to "divide the *property* of the parties ... in a just and reasonable manner." (emphasis added). The wife contends that the retirement benefits or pension rights of the husband were marital property and, hence, subject to division along equitable guidelines. She alleges that the court erred when it declined to award her a share of the Inland Steel pension fund.

We have before been faced with the issue of whether pension rights of one spouse are "property" and therefore within the ambit of IC 31–1–11.5–11(a) (West 1979).

"... [W]here the pension is not present or vested in that the retiree must survive in order to receive the next periodic payment and is not entitled to receive payment on demand, the pension is not marital property which can be divided or awarded to the other spouse under IC 31–1–11.5–11."

*Wilson v. Wilson* (1980), Ind.App., 409 N.E.2d 1169, 1178. *See Hiscox v. Hiscox* (1979), Ind.App., 385 N.E.2d 1166; *Savage v. Savage* (1978), Ind.App., 374 N.E.2d 536.

The record developed at the dissolution hearing does not really disclose sufficient information to advise the court regarding any vested rights the husband may have had in the pension fund. The wife did not produce any documentary evidence of the terms or conditions of the pension fund. On direct examination the wife's counsel asked the husband about his rights under the pension fund.

"Q. How much do you receive each month from Inland Steel on your pension?

---

1. The wife did not have a driver's license or any driving experience.

A. Seven-hundred dollars and seventy cents ($700.70).

Q. Seven-hundred dollars and seventy cents ($700.70)?

A. Now.

Q. Now? Right now. Each month?

A. That's wrong. (referring to figure on blackboard which was rewritten)

Q. Seven-hundred dollars seventy cents ($700.70) each month. And you receive that pension as long as you live?

A. I hope so.

Q. And according to the rules of the pension, none of that is payable to your wife; it is all payable to you; you are the one who worked for it, you are the one getting paid for it.

A. You said 'to your wife.' My wife will get half of that; my wife will get half of that.

Q. If you die?

A. Yes.

Q. And if she is still your wife at the time you die?

A. Umm humm.

Q. If you get divorced today, you get divorced today, she doesn't get a penny?

A. Right.

Q. She's right down the tubes?

A. (indicated in the affirmative)"

This is the *only* evidence concerning the terms of the pension fund and it does not adequately reveal whether the husband had a right to demand payment or whether survival was a condition to receiving further payments.

The trial court, however, in its findings, judgment and decree determined:

"8. That the Husband, Cruz Delgado, is retired and is presently receiving two *vested* retirement programs, one from his former place of employment, Inland, in the amount of $700.00 a month, and one from social security which is presently in the amount of $448.00 a month.

9. That according to the mortality tables, Cruz Delgado is a white male, has a life expectancy of 10.38 years, and according to the annuity tables has a factor of 5.998 to figure out the present value of his annuities. The gross value and present values of those annuities are as follows:

| | | Gross Value Over Period of 10.38 Years | Present Value |
|---|---|---|---|
| Inland Steel | $700.00 | $87,192.00 | $50,383.20 |
| Social Security | 448.00 | 55,802.00 | 32,245.24" |

(emphasis added). We note that the trial court labeled as vested both the retirement fund at Inland Steel and the Social Security benefits. The evidence in the record is not sufficient to support a finding that the pension fund at Inland was vested as that term was used in *Wilson, supra,* 409 N.E.2d 1169, to denote marital property. Therefore the trial court was in error when it stated that the Inland Steel fund was vested. The court, however, did not divide the pension funds between the parties. All rights to the fund remained in the husband who had accrued the rights through his years of employment. The wife has failed to demonstrate that the pension fund was vested or that it should be considered "property" and subject to division under IC 31–1–11.5–11. The trial court did not err in declining to award the wife a share of the pension fund.

The wife also urges that we reverse those cases which hold that a contingent pension is not "property" subject to division under IC 35–1–11.5–11. She urges us to take the "socially enlightened view" and divide the pension. We find no infirmity in those cases finding that contingent pensions are not marital property and, rather than reverse, we affirm and follow their reasoning.

█ The wife argues in the alternative that while a contingent pension fund is not marital property, the existence of her husband's rights must be considered by the court when it divides the marital property. We agree.

The applicable rule is thus stated:

" ... [W]hile it is required for the trial court to consider a spouse's pension plan as a factor in dividing existing marital property, an actual award under the property settlement must consist of assets in which the parties have a vested present interest."

*Hiscox v. Hiscox* (1979), Ind.App., 385 N.E.2d 1166, 1167.

█ The wife, however, contends that the trial court erred by failing to consider the husband's pension fund when making the property division. The wife asserts that this error is evinced by the fact that she was not awarded all the marital residence and/or all the Inland Steel stock. According to the wife, her share of the property awarded by the court was clearly inequitable in light of the fact that the parties had been married for 32 years. As noted above, however, even the wife's calculations show that she was awarded approximately 58% of the marital assets (when the husband's pension is not considered as a marital asset).

█ Furthermore, the "[wife] was not entitled as a matter of law to a specific amount of compensation in her award to balance against [the husband's] contingent pension interests, although the trial court was bound to take those interests into consideration in dividing the marital property." *Wilson v. Wilson, supra,* 409 N.E.2d at 1178.

Thus the rule that a court consider the contingent pension does *not* require the court to assess a dollar amount to the fund, or tally the value of all assets including the fund and then divide this total 50–50.

█ The court found that the husband had a pension fund and the court also ascertained the present value of that fund.[2] In its allocation of the marital assets the court awarded the wife over 50% of the property held between the parties. In dividing property pursuant to a dissolution decree a trial court abuses its discretion only where the award is clearly against the logic and effect of the facts and circumstances before the court. *Dahlin v. Dahlin* (1979), Ind.App., 397 N.E.2d 606, 608; *Wilcox v. Wilcox* (1977), 173 Ind.App. 661, 365 N.E.2d 792, 796. We are unable to say that the court violated that standard in the present case. The wife received control of the marital residence and a substantial portion of the liquid assets held between the parties. The husband was left without a residence, but his pension fund provided him with a source of income sufficient to acquire other housing. Accordingly, we find that the trial court did not abuse its discretion.

For the foregoing reasons, we affirm.

HOFFMAN, P. J., and STATON, J., concur.

2. The court in *Wilson v. Wilson* (1980), Ind. App., 409 N.E.2d 1169, 1178 ruled that even though a court must consider a contingent pension fund of one spouse in dividing the marital assets, the court does not have to make a specific finding of the present value of that contingent pension fund. The court in the present case then did more than is required when it determined a present value for the fund.