ANN DAVIDSON vs. HENRY L. DAVIDSON.

Barnstable.   November 15, 1983. — February 20, 1985.

Present: BROWN, ROSE, & WARNER, JJ.

*Divorce and Separation*, Modification of judgment, Alimony, Child sup-
port, Division of property, Attorney's fees. *Res Judicata*.

On appeal from a modification of a divorce judgment increasing the weekly
payments for the support of minor children and ordering payment of
$15,000 to the former wife as lump sum alimony, it was held that the
judge's findings were sufficient to establish a material change in cir-
cumstances and that the award of the lump sum alimony was well within
the judge's discretion. [366-367]
Where the record of a divorce proceeding did not make clear whether any
question of the assignment or division of the property of the parties had
been litigated in the proceeding, the judgment of divorce did not preclude
litigation of the issues raised in a subsequent complaint by the wife
seeking assignment of property under G. L. c. 208, § 34. [367-368]
In an action by a former wife seeking an assignment of property pursuant to
G. L. c. 208, § 34, some five years after the judgment of divorce had
become absolute, the property interests of the parties which were subject
to division were to be identified as of the time of their divorce. [368-370]
Where at the time of divorce proceedings the husband had an irrevocable
remainder interest under a testamentary trust of his deceased father,
although the value of the interest was uncertain, in a subsequent proceed-
ing under G. L. c. 208, § 34, for division of marital property, it was
within the discretion of the judge to conclude that the husband's interest
under the trust, from which he had received distributions after the divorce,
constituted a sufficient property interest to make it part of his estate for
purposes of G. L. c. 208, § 34. [371-374]
A husband's expectancy under the will of his mother, who was alive at the
time of divorce proceedings between the husband and his wife, could
not properly be treated by the judge as property subject to division
pursuant to G. L. c. 208, § 34. [374-375]
Where, in an action seeking a division of marital property pursuant to G. L.
c. 208, § 34, which was commenced some five years after the divorce of
the parties, it appeared that the judge may have considered property acquired
by the husband after the divorce in determining the husband's estate for
purposes of § 34, the judgment ordering the husband to pay $45,000 to
the wife "as a division of marital property" was reversed. [375-376]

In the circumstances, the judge in an action for division of property under G. L. c. 208, § 34, which was brought some time after the divorce of the parties erred in considering the factors enumerated in § 34 based on the situation of the parties at the time of the property division rather than the time of the divorce. [376-377]

Where a division of property under G. L. c. 208, § 34, takes place after a divorce, the property subject to division is generally to be valued as of the date of the order for division. [377]

At the trial of an action for modification of a divorce judgment during which the defendant's second wife, called as a witness by the plaintiff, had testified on direct examination and then had refused to return from Maryland, where she lived with the defendant, the defendant's attendant inability to cross-examine the witness did not, in the circumstances, entitle him to a mistrial. [377-378]

Where this court reversed the judgment in an action for assignment of marital property under G. L. c. 208, § 34, the accompanying award of counsel fees, which may have been based in part upon the result obtained by counsel, was to be reconsidered in light of this court's opinion and after a new trial. [378]

LIBEL for divorce filed in the Probate Court for the county of Barnstable on June 23, 1975.

A complaint for modification, filed on November 29, 1978, and a complaint seeking assignment of marital property, filed on March 5, 1981, were heard by *Shirley R. Lewis*, J.

*Roberta Kettlewell* for Henry L. Davidson.

*J. Richard Ratcliffe* (*Richard L. Zisson* with him) for Ann Davidson.

WARNER, J. Ann and Henry Davidson were divorced by a judgment which was entered as absolute on the docket of the Barnstable County Probate Court on September 7, 1976. By the terms of that judgment, Henry was ordered to pay $40 per week for the support of the parties' two minor children, custody of whom was given to Ann, and $10 per week as alimony for a period of two years. In addition, Henry was ordered to convey to Ann his interest in the marital home.[1] On November 29,

---

[1] Henry did not do so. Mortgage payments were substantially in arrears, and the mortgagee bank foreclosed a few days after the entry of the judgment of divorce nisi. Subsequently, Ann was allowed to repurchase the home with funds borrowed from her father.

1978, Ann filed a complaint for modification, which was twice amended. On March 5, 1981, she filed a complaint, later amended, seeking assignment of marital property under G. L. c. 208, § 34. The actions were tried together. The judge filed comprehensive findings of fact and conclusions of law. A judgment of modification was entered ordering, among other things, Henry to pay $125 per week for the support of the minor children[2] and lump sum alimony of $15,000. A second judgment was entered ordering Henry to pay Ann $45,000, "as a division of marital property," and $13,500 as counsel fees. Henry has appealed from the latter judgment, from so much of the former which awards Ann lump sum alimony, and from the denial of his motion for a mistrial.

1. *The Judgment of Modification.*

Henry says that the judge's findings show clear error in three respects. First, he argues that the judge placed undue emphasis on the fact that Henry was a life income beneficiary (in the discretion of the trustees) of an unfunded trust under the will of his mother. The judge's findings clearly indicate that she considered that the trust was not funded and might never be. Moreover, Henry's current circumstances, as found by the judge and not disputed, apart from any future income which he might receive from the trust, fully support the amount of the award made. Henry next contends that the judge failed to take into account income which Ann earned as a private duty nurse in the finding as to her average weekly earnings. That finding involved an assessment of the credibility of Ann's testimony, which was for the judge to make. Henry's final claim — that there was clear error in the judge's finding that Ann had no opportunity for the future acquisition of income other than through her earnings as a registered nurse — is patently without merit.

The detailed findings of the judge are more than sufficient to establish the material change in circumstances necessary to

---

[2] A temporary order had been entered on January 11, 1979, increasing child support to $90 per week. The judgment also ordered Henry to pay an arrearage of $3,815 under that order at the rate of $25 per week.

support a judgment of modification under G. L. c. 208, § 37. See *Robbins* v. *Robbins*, 343 Mass. 247, 249 (1961); *Schuler* v. *Schuler*, 382 Mass. 366, 368 (1981); *Pagar* v. *Pagar*, 9 Mass. App. Ct. 1, 2 (1980). The award of $15,000 as lump sum alimony was well within the judge's broad discretion. See *Surabian* v. *Surabian*, 362 Mass. 342, 348 (1972); *Schuler* v. *Schuler, supra* at 370.

2. *The Judgment Under G. L. c. 208, § 34.*

(a) *Res judicata*. Henry argues that Ann was precluded from seeking an assignment of property by the judgment of divorce. We have no record of the divorce proceedings other than the judgment of divorce nisi, entered March 4, 1976, in which Henry was ordered to pay child support and alimony, and to convey his interest in the marital home to Ann. The judge who heard the divorce action made no findings of fact, undoubtedly because the judgment was entered before the Supreme Judicial Court suggested, and then required, findings on the statutory factors set forth in G.L. c. 208, § 34. See *Bianco* v. *Bianco*, 371 Mass. 420, 423 (1976); *Rice* v. *Rice*, 372 Mass. 398, 402-403 (1977); *King* v. *King*, 373 Mass. 37, 40 (1977). See also *Putnam* v. *Putnam*, 5 Mass. App. Ct. 10, 15 (1977); Mass.R.Dom.Rel.P. 52(a), (c) (1975).

"[W]here the property rights of the parties have not been previously adjudicated, the Probate Court, upon consideration and findings relative to the statutory criteria, . . . may assign property pursuant to G. L. c. 208, § 34 . . . after a judgment of divorce has become absolute" (citations omitted). *Maze* v. *Mihalovich*, 7 Mass. App. Ct. 323, 324 (1979). See *Hay* v. *Cloutier*, 389 Mass. 248, 252 (1983). "[A] judgment of divorce only settles those 'matters which were necessarily involved and all issues which were actually tried and determined.'" *Maze* v. *Mihalovich, supra* at 326, quoting from *Whitney* v. *Whitney*, 325 Mass. 28, 31 (1949). As the *Maze* and *Hay* cases make clear, G. L. c. 208, § 34, issues are not "necessarily involved" in a judgment of divorce. From the record we are unable to determine whether any question of the assignment or division of the property of the parties was litigated in the divorce proceeding. We know that the judge could have ordered

the conveyance of Henry's interest in the marital residence on traditional alimony principles. See *Crossman* v. *Crossman*, 14 Mass. App. Ct. 966, 968 (1982). As will be seen in the discussion which follows, the judgment did not deal expressly with all of the property interests of the parties. *Ibid.*

We conclude, as did the probate judge, that the judgment of divorce did not preclude litigation of the issues raised in the subsequent complaint for the assignment of property under G. L. c. 208, § 34.[3]

(b) *Property subject to division.*[4] Ann's amended complaint alleged that at the time of the divorce Henry had (1) an irrevocable remainder interest under a testamentary trust of his deceased father which had, at the time of the complaint, vested in possession, and (2) an expectancy, under the will of his mother, which had ripened into an inheritance at the time of the complaint. There is no dispute as to the judge's findings that at the time of trial Henry had received distributions from his father's trust of about $141,000 and tangible personal property from his mother's estate with a value of about $44,000.[5] It is also not in question that the judge considered at least these assets to be subject to division under G. L. c. 208, § 34.

---

[3] Res judicata is an affirmative defense which must be pleaded. Mass.R.Dom.Rel.P. 8(c) (1975). The docket entries do not indicate that an answer to or motion to dismiss the original or amended complaint for assignment of property was filed. No such pleading appears in the appendix. An answer was, of course, required. Mass.R.Dom.Rel.P. 7(a), 8(b) (1975). (There is no provision in the Rules of Domestic Relations Procedure for summary judgment). See *Dowd* v. *Morin*, 18 Mass. App. Ct. 786, 789 n.9 (1984). The record does not show that the question of issue preclusion was argued to the judge, but we assume that such was the case, since the judge addressed the issue in her conclusions of law. In any event, the judge did not rest her decision on the affirmative defense of res judicata, and so it is unnecessry to apply the principles discussed in *National Medical Care, Inc.* v. *Zigelbaum*, 18 Mass. App. Ct. 570, 578-579 (1984).

[4] "In addition to or in lieu of a judgment to pay alimony, the court may assign to either husband or wife all or any part of the estate of the other." G. L. c. 208, § 34, as appearing in St. 1977, c. 467.

[5] As to Henry's interest under his mother's testamentary trust and the judge's findings with respect thereto, see part 1 of this opinion.

Henry contends that since these assets did not come into his possession until after the judgment of divorce absolute, they constituted "after acquired" property and were thus not part of his "estate" and subject to division under § 34. Ann counters that the Supreme Judicial Court in *Rice* v. *Rice*, 372 Mass. 398 (1977), foreclosed the issue by declaring that § 34 "gives the trial judge discretion to assign to one spouse property of the other spouse *whenever and however acquired*" (emphasis supplied). *Id.* at 400. Thus, the argument goes, since the § 34 case was heard subsequent to the divorce under the holding in *Maze* v. *Mihalovich, supra*, the interests in question were subject to division.

Our consideration of the issue thus framed, one not heretofore considered by our appellate courts, begins with an examination of the nature of the rights afforded spouses under § 34. Without rehearsing in detail what has been said in our appellate cases which have treated the differences between traditional alimony and new division of property concepts (see e.g., *Bianco* v. *Bianco*, 371 Mass. 420 [1976], and *Putnam* v. *Putnam*, 5 Mass. App. Ct. 10 [1977]), there is no question that the purpose and effect of § 34 has been, since its revision by St. 1974, c. 565,[6] to provide for the equitable division of the property interests of partners in a marriage. See *Rice* v. *Rice, supra* at 401[7]; *Putnam* v. *Putnam, supra* at 13. In making such a division "the court may award to the wife a portion of the husband's separate estate in recognition of the vital and substantial, although nonmonetary, contribution which she has

---

[6] General Laws c. 208, § 34, as appearing in St. 1977, c. 467, applied to the trial of this case. See *Zildjian* v. *Zildjian*, 8 Mass. App. Ct. 1, 12-13 (1979). Further amendments have been made by St. 1982, c. 642, § 1, and St. 1983, c. 233, § 77.

[7] Chief Justice Hennessey, the author of *Rice*, later commented: "In practical effect, the court [in *Rice*] in a liberal interpretation of [§ 34], treated the marriage as an implied partnership for the purposes of distribution of property. As in the case law dealing with family operated small businesses, the Rices' marriage could be viewed as a pooling of resources, a co-ownership of the property brought to the marriage and acquired later." Hennessey, Explosion in Family Law Litigation, Challenges and Opportunities for the Bar, 14 Family L.Q. 187, 189 (1980).

made to the marital partnership. . . . The value of the property to be assigned is dependent on those circumstances which warrant division of property in recognition of the marital partnership concept. . . ." Inker, Walsh & Perocchi, Alimony and Assignment of Property: The New Statutory Scheme in Massachusetts, 10 Suffolk U.L. Rev. 1, 8 (1975).[8] "[T]he right to equitable division of property is fundamentally based on a partnership model." Inker & Clower, Towards a New Justice in Marital Dissolution: The Massachusetts Statutory Scheme and Due Process Analysis, 16 Suffolk U.L. Rev. 907, 931 (1982). See Clark, Domestic Relations § 14.8, at 449 (1968); Ginsburg, M.G.L. c. 208, § 34 — Some Observations about the Division of Property Leading to Predictability and Consistency, 25 B.B.J., 10 (Jan. 1981).

None of the cases construing § 34 involved property interests acquired after the dissolution of the marital partnership. The language in *Rice* v. *Rice, supra* at 400, "whenever and however acquired," in context referred to separate property acquired by the husband before the marriage and as gifts during the marriage. *Id.* at 399-400. To hold that property interests acquired after the dissolution of the marriage are subject to division under § 34 would be contrary to the marital partnership concept on which § 34 is founded. See Inker et al., 10 Suffolk U.L.Rev. 4, n.10. We conclude, therefore, that the property interests of Ann and Henry which were subject to division under § 34 were to be identified as of the time of their divorce.[9]

---

[8] This article has been cited with approval in many cases construing § 34. See *Bianco* v. *Bianco*, 371 Mass. 420, 422 (1976); *DuMont* v. *Godbey*, 382 Mass. 234, 237 (1981); *Putnam* v. *Putnam*, 5 Mass. App. Ct. 10, 13 n.4 (1977); *Lynch* v. *Lynch*, 5 Mass. App. Ct. 167, 170 (1977); *Maze* v. *Mihalovich*, 7 Mass. App. Ct. 323, 325 (1979); *Zildjian* v. *Zildjian*, 8 Mass. App. Ct. 1, 14 (1979); *Singer* v. *Singer*, 8 Mass. App. Ct. 113, 121 n.14 (1979); *Tanner* v. *Tanner*, 14 Mass. App. Ct. 922, 923 (1982).

[9] In this case it makes no difference whether that property is identified as of the time of the divorce trial, the judgment nisi or the judgment absolute, as the situation was the same at all of those times. We intend no suggestion of a rule fixing any of those dates, or excluding some earlier time in appropriate circumstances, e.g., the date of the separation of the parties, as determinative in identifying divisible property. We think the development of the law in this respect is best left to a case-by-case analysis.

We turn then to the interests (as they existed at the time of the divorce) which Ann identified in her amended complaint under § 34, and on which the parties seem to have focused at trial: (1) Henry's remainder interest under his deceased father's testamentary trust; and (2) Henry's expectancy under the terms of his living mother's will.

At the time of the divorce in 1976, the following were the operative facts. Under the terms of the testamentary trust of Henry's father, Henry's remainder interest would be distributed free of trust when his mother died and when he reached age 35. Henry was about 33 years old and his mother was alive. The trustees were empowered "in their uncontrolled discretion" to invade principal for the benefit of Henry's mother. The value of the remainder interest was, therefore, uncertain and actuarial calculations would be to no avail. In addition, the remainder was subject to a valid spendthrift clause and could not have then been reached by Ann in satisfaction of any judgment or claim. See *Bucknam* v. *Bucknam*, 294 Mass. 214 (1936); *Burrage* v. *Bucknam*, 301 Mass. 235 (1938); *Pemberton* v. *Pemberton*, 9 Mass. App. Ct. 9, 18-22 (1980). Under Henry's mother's will, executed on December 20, 1975, Henry would receive certain tangible personal property and he would have a life estate under a trust.[10]

While "[p]roperty concepts have not become immaterial," *Putnam* v. *Putnam*, 5 Mass. App. Ct. at 15, implicit in our appellate decisions is the rejection of the notion that the content of the estates of divorcing parties ought to be determined by the wooden application of technical rules of the law of property. We think an expansive approach, within the limits of the marital partnership concept, is appropriate. The purpose of § 34 is to "empower[ ] the courts to deal broadly with property and its equitable division incident to a divorce proceeding. Such broad discretion is necessary in order that the courts can handle the myriad of different fact situations which surround divorces and arrive at a fair financial settlement in each case." (Citations omitted.) *Rice* v. *Rice*, 372 Mass. at 401.

---

[10] See part 1 of this opinion.

We conclude that Henry's remainder interest under his father's testamentary trust, while it may have been at the outer limits, constituted a sufficient property interest to make it a part of his estate for consideration in connection with a property division under § 34. Henry's right to the remainder was fixed at the time of the divorce in 1976 (Henry's father died about 1968. The record does not show when his will was admitted to probate.), subject only to the conditions of survivorship. We do not think that either the uncertainty of value or the inalienability of the interest, in themselves, are sufficient to preclude consideration of the interest as subject to division.[11]

---

[11] Other jurisdictions vary in their determinations as to what interests constitute property subject to division at divorce. (The starting point for analysis of any of the cases is the statute under which equitable division is allowed. See note 13, *infra.*) For instance, some States include nonpossessory remainders which are not subject to divestment. See e.g., *McCain* v. *McCain*, 219 Kan. 780 (1976) (vested remainder, in land, which could be transferred, alienated or mortgaged subject to division); *In re Marriage of Hill*, 197 Mont. 451 (1982) (although right to possession postponed, vested remainder divisible at divorce). This approach is not uniform. See, e.g., *Frank G.W.* v. *Carol M.W.*, 457 A.2d 715 (Del. 1983) (vested trust interests not acquired for purposes of equitable distribution until beneficiary obtains possession).

Similarly, jurisdictions differ as to whether interests subject to contingencies may be equitably distributed. Some States exclude this species of interest as speculative and remote. See, e.g., *Kroha* v. *Kroha*, 265 Ark. 170 (1979) (trust corpus, which could not be mortgaged, assigned or sold, distributed in monthly payments to beneficiary during life until depletion, not divisible property); *Loeb* v. *Loeb*, 261 Ind. 193 (1973) (vested remainder subject to condition subsequent not divisible asset); *Storm* v. *Storm*, 470 P.2d 367 (Wyo. 1970) (beneficiary's right to trust corpus conditioned on survivorship is "mere expectancy" not subject to division). Other courts have not hesitated to define such interests as divisible property. See, e.g., *In re Marriage of Bentson*, 61 Or. App. 282 (1983) (whether vested or contingent, husband's interest in trust divisible at divorce); *Trowbridge* v. *Trowbridge*, 16 Wis.2d 176 (1962) (dictum: under Wisconsin law, remainder interest in trust subject to conditions of survivorship, depletion of corpus, and spendthrift clause, part of marital estate subject to division at divorce).

There have also been cases dealing with the question whether a chose in action accruing during marriage constitutes property divisible at divorce. See and compare *Postill* v. *Postill*, 116 Mich. App. 578 (1982) (right of action constitutes property suitable for division in divorce), with *Fries* v. *Fries*, 288 N.W.2d 77 (N.D. 1980) (personal injury claim too speculative

We do not, of course, suggest that a judge must divide such an interest or assign it to the ledger of the holder in making a division of property. The determination whether to include a particular interest in the property to be divided lies within the sound discretion of the judge after consideration of all of the § 34 factors.[12]

---

for inclusion).

For other cases which have considered interests with uncertain or speculative value, see and compare *Richardson* v. *Richardson*, 280 Ark. 498 (1983) (value of stock options included), with *In re Marriage of Moody*, 119 Ill. App.3d 1043 (1983) (unexercised stock options found not to constitute marital property); and see and compare *In re Marriage of Stewart*, 59 Or. App. 713 (1982) (accounts receivable of husband's veterinary practice included in property division), with *Dogu* v. *Dogu*, 652 P.2d 1308 (Utah 1982) (husband's accounts receivable excluded in property division).

This court has recognized that nonvested pension rights constitute property subject to division at divorce. *Dewan* v. *Dewan*, 17 Mass. App. Ct. 97 (1983). Such has been the trend in both common law and community property jurisdictions. See, e.g., *Van Loan* v. *Van Loan*, 116 Ariz. 272 (1977); *In re Marriage of Brown*, 15 Cal. 3d 838 (1976); *Robert C.S.* v. *Barbara J.S.*, 434 A.2d 383 (Del. 1981); *In re Marriage of Fairchild*, 110 Ill. App. 3d 470 (1982); *Damiano* v. *Damiano*, 94 A.D.2d 132 (N.Y. 1983); *Carpenter* v. *Carpenter*, 657 P.2d 646 (Okla. 1983); *Cearley* v. *Cearley*, 544 S.W.2d 661 (Tex. 1976); *Leighton* v. *Leighton*, 81 Wis.2d 620 (1978). Contrast *In re Marriage of Delgado*, 429 N.E.2d 1124 (Ind. App. 1982); *Ratcliff* v. *Ratcliff*, 586 S.W.2d 292 (Ky. Ct. App. 1979); *Miller* v. *Miller*, 83 Mich. App. 672 (1978). As to vested but unmatured pension rights, see Golden, Equitable Distribution of Property §§ 6.13 - 6.14 (1983); Meyer, Vested but Unmatured Pensions as Marital Property: Inherent Valuation, Allocation and Distribution Problems in Equitable Distributions, 14 Rutgers L.J. 175 (1982).

[12] As will be seen later in this opinion, the question of valuation presents no problem in this case, since the division was made at a time when the remainder interest had vested in possession. In the case of such an interest which has not vested in possession at the time of trial of the § 34 issues, and where there is no spendthrift or other limitation and actuarial evidence as to valuation is available, guidance in crafting creative judgments may be found in cases dealing with pension interests. See *Dewan* v. *Dewan*, 17 Mass. App. Ct. 97 (1983), and cases cited. In situations where it is not feasible to fashion an equitable judgment because of legal or practical impediments, the judge may, in the careful exercise of discretion, balancing the competing considerations of finality and fairness, decide to reserve, in whole or in part, the question of division of property, and retain jurisdiction. Cf. *In re Marriage of Fairchild*, 110 Ill. App. 3d 470, 476 (1982). In all instances, the judge's exercise of discretion in these respects will be influenced by consideration of the criteria enumerated in § 34. We leave the de-

Henry's expectancy at the time of the divorce under the will of his mother stands on a different footing. The mother was alive (she died on January 30, 1979) and could have changed her will. There are practical reasons for a rule that generally excludes such expectancies from the definition of property subject to division under § 34. An attempt at some determination of the usual speculative quantum of an expectancy might well involve the lengthy trial of issues collateral to the § 34 action: the validity of a will, current and future testamentary capacity, valuation of the estates of others, familial relationships, and so forth. See *Krause* v. *Krause*, 174 Conn. 361, 365 (1978). The record in this case shows no extraordinary circumstances which would support treating Henry's expectancy as a part of his estate for consideration in connection with a property division under § 34.[13] In any event, the expectancy might be considered by the judge, having been mindful of the evidentiary constraints which should deflect secondary considerations, under the § 34 criterion of "opportunity of each for future acquisition of capital assets and income" in determining what disposition to make of the property which *is* subject to

velopment of thoughtful solutions to "the myriad of different fact situations which surround divorces," *Rice* v. *Rice*, 372 Mass. at 401, to the case by case resolution by trial judges, for the most part probate judges, who will bring to bear their experience, insight and knowledge.

[13] Massachusetts permits the equitable distribution of "all or any part of the estate of the other," G. L. c. 208, § 34, which has been held to include gifts, *Rice* v. *Rice, supra* at 399-401, and inheritances, *Earle* v. *Earle*, 13 Mass. App. Ct. 1062, 1063 (1982). Cf. *Belsky* v. *Belsky*, 9 Mass. App. Ct. 852, 853 (1980). Some statutes, including those of Kentucky, Ken. Rev. Stat. § 403.190 (1984); Maine, Me. Rev. Stat. Ann. tit. 19 § 722(A) (1981); Missouri, Mo. Rev. Stat. § 452.330 (Supp. 1984); New Jersey, N.J. Stat. Ann. § 2A:34-23 (West Supp. 1984); Pennsylvania, 23 Pa. Cons. Stat. Ann. § 401 (Purdon Supp. 1984); and Wisconsin, Wis. Stat. § 767.255 (1981), exclude property acquired by a spouse through gift, bequest, devise or descent from division at divorce. The eight community property States, Arizona, California, Idaho, Louisiana, Nevada, New Mexico, Texas and Washington, exclude property acquired by a spouse through gift, bequest, devise or descent. See 15A Am.Jur. 2d, Community Property § 26 (1976). See also, The Uniform Marriage and Divorce Act § 307, Alternative B comment, 9A U.L.A. 144 (1979) (Alternative B is intended to provide a definition of marital property consistent with the existing definition in community property States).

division. See *Rice* v. *Rice, supra* at 402; *Belsky* v. *Belsky*, 9
Mass. App. Ct. 852, 853 (1980). See also *In re Marriage of
Smith*, 100 Ill. App. 3d 1126 (1981) (Even where governing
statute excluded inheritances from definition of marital prop-
erty, it was proper to consider wife's inheritance as a factor
bearing on division of property). Compare *Lord* v. *Lord*, 443
N.E.2d 847 (Ind. App. 1982).

The judge's findings indicate that she may have considered
after-acquired property in determining Henry's estate. She
listed, for example, the home which Henry owned with his
wife and tangible personal property which he inherited from
his mother, and assigned values to them. It would have been
helpful if the judge had separated her findings in the modifica-
tion action from those in the § 34 action. (We urge judges to
do so in the future.) To the extent that she considered after-ac-
quired property in the § 34 action, there was error. See *Hay*
v. *Cloutier*, 389 Mass. at 250 & n.3. Since we cannot determine
whether there were improper considerations, the judgment must
be reversed.

(c) *The G. L. c. 208, § 34 factors.*[14] As of what date are
the § 34 factors to be applied? For the reasons discussed in
part 2(b) above, we think that the marital partnership concept
embodied in § 34 dictates that in this case the factors be
examined as of the date of the divorce.[15] The focus of the

---

[14] "In determining the amount of alimony, if any, to be paid, or in fixing
the nature and value of the property, if any, to be so assigned, the court
. . . shall consider the length of the marriage, the conduct of the parties
during the marriage, the age, health, station, occupation, amount and sources
of income, vocational skills, employability, estate, liabilities and needs of
each of the parties and the opportunity of each for future acquisition of
capital assets and income. The court may also consider the contribution of
each of the parties in the acquisition, preservation or appreciation in value
of their respective estates and the contribution of each of the parties as a
homemaker to the family unit." G. L. c. 208, § 34, as appearing in St. 1977,
c. 467.

[15] As the situation of the parties was substantially the same at the times
of the entry of the judgments nisi and absolute, we do not reach questions
which may arise where property is acquired or circumstances, in the § 34
sense, change between the entry of the judgments nisi and absolute. See
*Zildjian* v. *Zildjian*, 8 Mass. App. Ct. 1, 13 (1979). Nor do we comment

commentators and, to some degree, our appellate cases, has been on the recognition by § 34 of a wife's service contributions to the marital partnership. The underpinning of any order for division of property under § 34 is, however, the judge's consideration of the contributions, in the statutory terms, of each spouse, as well as other factors in existence at the dissolution of the partnership which have been traditionally applied in determining alimony.[16] See *Bianco* v. *Bianco*, 371 Mass. at 422-423; *Putnam* v. *Putnam*, 5 Mass. App. Ct. at 14-15; Inker & Clower, 16 Suffolk U.L. Rev. at 913-918.

The judge made findings on many of the § 34 factors, for example, age, health, station, occupation, amount and sources of income, estate, liabilities, needs, and opportunity for future acquisition of capital assets and income, on the basis of the situation of the parties at the time of trial. The conclusion is inescapable that the judge in substantial part based § 34 relief on those findings. To the extent that she did so, there was error; and the judgment must be reversed.[17]

(d) *Valuation of property subject to division.* Where the division of property under § 34 takes place, as here, after the divorce, the property subject to division is to be valued as of the date of the order for division. Henry does not argue to the contrary. Thus, the parties equitably share in any appreciation or depreciation in the value of the property. The results are no different from those which follow from a division at the time of a divorce, except that in the latter case each spouse may have some control over the economic vicissitudes of the property which is assigned to him or her. Of course, the principles

on factual settings, e.g., those involving couples separated for many years before divorce, which might indicate the use of an earlier date for the application of some or all of the § 34 factors.

[16] We recognize, of course, that some or all of the contributions of spouses may have ceased well before the divorce.

[17] In those situations where a judge after a divorce trial exercises discretion to reserve property division and retain jurisdiction, see note 12, *supra*, the judge should, nevertheless, make written findings on the § 34 criteria at the time of trial, so that they may be used by the judge who subsequently hears the § 34 case.

which apply to after-acquired property may come into play
with respect, for example, to improvements to real estate to
which an increase in value may fairly be attributed, or additions
to stock holdings, as opposed to stock splits or dividends. No
such considerations have been shown to exist here. The judge
was correct in valuing Henry's remainder interest under his
father's testamentary trust on the basis of the distributions from
the trust which Henry had received at the time of trial.

3. *The Motion for Mistrial.*

Henry's wife, Donna, was called as a witness by Ann; Donna
had not been subpoenaed. She testified on direct examination
on May 19 and June 9, 1981. On June 25, 1981, Ann filed a
motion to join Donna as a defendant, pursuant to Mass.R.Dom.
Rel.P. 19(a) (1975). Thereafter, Donna's attorney advised her
not to return to Massachusetts from Maryland, where she lived
with Henry, and she did not do so. On July 14, 1981, Henry's
motion for a mistrial, on the ground of his inability to cross-
examine Donna, was denied. The trial ended on July 15, 1981.
On September 17, 1981, Ann's motion to join Donna as a
party was denied.

Since there must be a new trial on the complaint under G. L.
c. 208, § 34, we consider the denial of the motion for mistrial
only as it related to the action for modification. In this respect,
Henry's argument on appeal that Donna's testimony formed
the basis for the judge's findings as to his "financial situation"
ignores the ample evidence from other sources, including
Henry's own testimony, on which the judge could have based
her findings on material change of circumstances.[18] Henry did
not seek relief less drastic than mistrial, as, for example, the
striking of Donna's direct testimony. In the almost ten months
which elapsed from the denial of the motion to join Donna as
a party and the entry of judgment, Henry did not move to
reopen the trial for the purpose of cross-examining Donna.
Moreover, Henry points to no particular prejudice from

[18] In addition, according to the docket entries, the judge had financial
statements of both parties. Those statements are not reproduced in the
appendix.

Donna's direct testimony. The word "mistrial" is used to denote "such fundamental errors in a trial as to vitiate the result." *C.W. Hunt Co.* v. *Boston Elev. Ry.*, 217 Mass. 319, 321 (1914). "The declaration of a mistrial is within the sound judicial discretion of the trial judge." *Riley* v. *Davison Constr. Co.*, 381 Mass. 432, 444 (1980). There was no abuse of discretion in the denial of the motion.

4. *Counsel Fees.*

Henry's only argument on this point is that the judge abused her discretion in ordering him to pay $13,500, as counsel fees for Ann, because he "lacks the financial status" to pay that amount. He does not argue that the record was inadequate reasonably to evaluate the services of Ann's counsel, or that the award was not commensurate with the value of the services rendered. See *Ross* v. *Ross*, 385 Mass. 30, 38-39 (1982). Contrast *Robbins* v. *Robbins*, 16 Mass. App. Ct. 576, 582 (1983). The judge's well supported findings clearly show that Henry has the "financial status" to satisfy the award of counsel fees. In her conclusions of law the judge expressly recognized the guidelines for determining such awards. See *Hayden* v. *Hayden*, 326 Mass. 587, 596-597 (1950); *Kane* v. *Kane*, 13 Mass. App. Ct. 557, 560 (1982). "[T]he award [of counsel fees] may be presumed to be right and ordinarily ought not to be disturbed." *Ross* v. *Ross, supra* at 39, quoting from *Smith* v. *Smith*, 361 Mass. 733, 738 (1972). See *Caldwell* v. *Caldwell*, 17 Mass. App. Ct. 1032, 1035 (1984). There was no abuse of discretion in the award of counsel fees.

However, since the award was made as a part of the judgment under G. L. c. 208, § 34, and since we may assume it was based, at least in part, on the result which Ann's counsel obtained in that action, we also reverse the judgment in this respect, so that the matter may be reconsidered in light of this opinion, and after a new trial on the § 34 complaint.

The judgment of modification is affirmed. The judgment pursuant to G. L. c. 208, § 34, is reversed.

*So ordered.*