LILLIAN M. ZEH vs. STEPHEN W. ZEH, JR.

No. 91-P-1097.

Norfolk. December 15, 1992. - September 3, 1993.

Present: DREBEN, JACOBS, & GREENBERG, JJ.

*Divorce and Separation,* Division of property, Alimony.

In the circumstances of a divorce proceeding, the husband's vested but un-
distributed inheritance from his father was property subject to division
under G. L. c. 208, § 34. [264-266]
In a divorce proceeding, the judge, in apportioning the marital assets
under G. L. c. 208, § 34, did not weigh the effect of the wife's long-
term contributions as a homemaker, or account for the size of the mari-
tal estate as enhanced by the husband's inheritance from his father; the
matter was remanded for further consideration and additional findings
of fact. [266-267]
A Probate Court judge erred in failing to make findings and orders in
compliance with G. L. c. 208, § 34, which mandates the provision of
health insurance or other health coverage when making an order for
alimony; the matter was remanded for such findings and determination.
[267-268]

COMPLAINT for divorce filed in the Norfolk Division of the
Probate and Family Court Department on August 25, 1988.

The case was heard by *James M. Sweeney,* J.

*Ruth E. Soybel* for Lillian M. Zeh.

*Ira D. Feinberg* for Stephen W. Zeh, Jr.

JACOBS, J. In this appeal from a divorce judgment entered
in the Probate and Family Court, Lillian M. Zeh (wife), es-
sentially claims that the judge was manifestly unfair in that
he did not properly consider an inheritance of Stephen W.
Zeh, Jr. (husband), and her contributions to the marriage in
dividing their assets and awarding alimony pursuant to
G. L. c. 208, § 34. She also argues that the judge erred in
not making provision for health insurance coverage for her.
We agree with her contentions, and accordingly vacate the

financial components of the judgment and remand the case for further proceedings.

We recite the relevant facts from the judge's findings. The parties were married in 1964. They have two children, both adults at the time of the divorce hearing. After the birth of their second child in 1968, marital intimacy between the parties ended. "[T]he parties argued and on occasion were physically abusive to each other." The wife left the marital home and brought this action in August, 1988. The husband, a high school graduate, was self-employed during the marriage, managing residential property owned by him and his father. The wife, a college graduate, was employed throughout the marriage, first as a service representative for a telephone company and later in three part-time positions: meter maid, school crossing guard, and clerical worker. At the time of the divorce hearing in 1990, the wife was fifty-two years old and the husband fifty-six years old, and while each was experiencing physical ailments, both could continue their employment.

At the time of the divorce hearing, the husband's gross weekly income was $746.53, comprised of $394.77 in net rental income and $351.76 in dividends and interest, and the wife's gross weekly income was $410. The wife's net weekly earnings of $264.77 were insufficient to meet her weekly expenses of $406.41. The judge made no findings concerning the husband's needs other than that he was able to meet them and provide support for the wife. He also found that the husband had a gross estate of $603,820[1] and liabilities of $73,341, while the wife had an estate of $24,000, consisting almost entirely of future pension rights presently valued at $23,287, and liabilities of $32,417. In addition, approximately $11,000 of the husband's assets were being held in escrow by order of the court pending the outcome of the divorce action. The judge found that the wife was the primary caretaker of the children and the home during the marriage and utilized her earnings to purchase clothing for the chil-

---

[1]This amount is independent of any assets in the probate estate of the husband's father. See *infra*.

dren. She also did "some minor clean up work" and snow shovelling at the rental property managed by the husband. He found that the husband "took care of the children when the wife worked and took them camping and to baseball games." He characterized their station in life as "middle class."

From 1970 until the time of his death in 1984,[2] the husband's father supplemented the parties' income. In 1975, he made a gift of several apartment buildings in Brookline to the husband. The husband later sold two of these buildings, remitted half of the proceeds to his father and used the other half to purchase property in New York in his and his father's name. The remainder of the Brookline property was valued at $236,000 at the time of the divorce hearing. The parties utilized one of the apartments as their home, and the husband continued to live there after the wife left. Upon his father's death, in 1984, the husband became the sole owner of property in New York valued at $178,000 at the time of the divorce. The husband's interest in other property in New York State jointly owned with his mother was valued at $165,000.

In the judgment of divorce, the judge awarded the wife a lump sum of $120,000 and weekly alimony of $100. The judgment also provided that the amount held in escrow be released to the husband and that he pay the wife's attorneys' fees in the amount of $10,000. The judgment contained no provision for health insurance for the wife.

The uncontradicted materials and evidence in the record indicate that the husband and his mother were nominated and appointed executors of his father's will, which was admitted to probate, without contest, in the State of New York on March 6, 1985; that the father's gross estate was valued at over one and one-half million dollars; and that the husband's legacy of a one-quarter interest in the residual estate was valued at $421,918.82. Notwithstanding the issuance of Federal and State estate tax closing letters in 1987, no expla-

---

[2]The judge's findings list the death as occurring in 1984. The record indicates that the date of death was February 9, 1985.

nation is contained in the record for the husband's legacy not having been distributed as of the time of the divorce hearing in October, 1990, nor for the nonpayment of accrued executor's fees owed to him in the amount of $40,389. Although the weekly dividend and interest income of $351.76 attributed to the husband by the judge in his findings emanated almost entirely from the father's estate, that fact is not mentioned in the findings, and the husband's share of the probate assets which generated that income is not included in the judge's listing of assets constituting the "estate" of the husband.

Aside from referring to the father's death in his findings and noting that the husband acquired certain real property in New York State as surviving joint owner, the judge does not make mention of any specific expectancies relating to inheritance beyond acknowledging that the husband "has a substantial opportunity to acquire further assets from the estate of his father, his fees as co-executor of that estate and an inheritance from his mother[3] . . ." and finding that "[t]he husband's estate is directly due to the generosity of his parents and the inheritance from the estate of his father."

In his statement of the theory for his conclusions the judge stated that "[t]he assets of this marriage were acquired as a result of gifts and/or inheritances from the husband's parents," and "[t]he wife contributed nothing to the acquisition of these assets." He further stated that the wife "will have sufficient money to meet her reasonable needs" from her earnings, alimony, and income from the lump sum of $120,000.

The applicable legal principles are well established. "Under G. L. c. 208, § 34, a judge has broad discretion to divide marital property equitably. See *Drapek* v. *Drapek*, 399 Mass. 240, 243 (1987). Of course, that discretion is not

---

[3]While the record is silent as to the total financial worth of the husband's eighty-one year old mother, there is uncontradicted evidence that she inherited one-half of the residual estate of the father and that the value of her share of real estate jointly held with the husband was $165,000.

unlimited. See *Handrahan* v. *Handrahan*, 28 Mass. App. Ct. 167, 168 (1989), and cases cited. We require that judges dividing marital property make express findings indicating that all relevant factors under § 34 have been considered. See *Rice* v. *Rice*, 372 Mass. 398, 402-403 (1977). We also require that the reasons for the judge's conclusions must be apparent in his decision. See *Bowring* v. *Reid*, 399 Mass. 265, 267 (1987). A judgment dividing property that is 'plainly wrong and excessive' cannot stand. See *Redding* v. *Redding*, 398 Mass. 102, 107 (1986)." *Pare* v. *Pare*, 409 Mass. 292, 296 (1991). See *Early* v. *Early*, 413 Mass. 720, 727 (1992). "Contribution to the marital enterprise is a factor to be taken into account in what is a fair division of assets. . . . It is the duty of a reviewing court to consider whether the apportionment of assets flows rationally from the judge's findings under § 34." *Denninger* v. *Denninger*, 34 Mass. App. Ct. 429, 430-431 (1993), and cases there cited.

1. *The Inheritance.*

While an expectancy of an inheritance does not qualify as property subject to division under G. L. c. 208, § 34, it may be considered by the judge under the "criterion of 'opportunity of each for future acquisition of capital assets and income' in determining what disposition to make of the property which *is* subject to division." *Davidson* v. *Davidson*, 19 Mass. App. Ct. 364, 374-375 (1985). See Kindregan & Inker, Family Law and Practice § 883, at 481 (1990). An inheritance in possession clearly stands on different footing and constitutes part of the estate of the recipient subject to division under § 34. *Earle* v. *Earle*, 13 Mass. App. Ct. 1062, 1063 (1982). *Davidson* v. *Davidson*, *supra* at 374 & n.13. *Comins* v. *Comins*, 33 Mass. App. Ct. 28, 30 (1992).

In the circumstances of this case, the husband's inheritance from his father falls well within the category of assets subject to division. As a noncontingent legacy, it vested as of the date of the father's death. See *DiSanto* v. *Wellcraft Marine Corp.*, 149 A.D.2d 560, 562-563 (N.Y. 1989); 6 Page, Wills § 59.2, at 378-380 (Bowe-Parker rev. ed. 1962 & Supp. 1993). See also *Union Trust Co.* v. *Nelen*, 283

Mass. 144, 149 (1933); 2 Newhall, Settlement of Estates § 356, at 447 & n.6 (4th ed. 1958). A fair estimation of the size of the legacy appears to have been available at the time of the divorce hearing, which was conducted five and one-half years after the father's will had been admitted to probate. In the absence of evidence of claims against the estate or other unusual circumstances, there is no reason to treat the legacy other than as part of the "estate" of the husband and subject to equitable division under § 34. It falls more closely within the definition of "estate" as "includ[ing] all property to which [a spouse] holds title, . . . whenever and however acquired," *Rice* v. *Rice*, 372 Mass. at 400, than "a number of intangible interests (even those not within the complete possession or control of their holders)" which have been held to be part of a spouse's estate for purposes of § 34, such as "nonvested pension rights . . . rights in pending lawsuits . . . and rights under a contingent fee agreement. . . ." *Lauricella* v. *Lauricella*, 409 Mass. 211, 214 (1991). Our courts' expansive view of the marital estate of a party to a divorce includes a beneficial interest in a trust, notwithstanding that distribution of that interest has not occurred and may be conditioned on factors outside of the spouse's control. *Id.* at 216. *Davidson* v. *Davidson*, 19 Mass. App. Ct. at 371-372. *Comins* v. *Comins, supra* at 30. Moreover, the fact that the value of a vested, but not yet distributed, interest may not be susceptible of precise calculation "does not alter its character as a divisible asset." *Lauricella* v. *Lauricella, supra* at 217. See *Davidson* v. *Davidson*, 19 Mass. App. Ct. at 373 n.12.

The substance and tenor of the judge's findings lead us to conclude that he treated the husband's inheritance from his father's estate as nothing more than a mere expectancy and did not include it as part of the divisible estate of the husband. In context, his allusion to "inheritances" reasonably may be read as limited to interests acquired by the husband as surviving joint owner of real estate held by him and his father. If, as the husband contends, the judge included the inheritance as part of the husband's estate, the judgment

would result in his having allotted to the wife less than nine percent of the divisible assets, a result which we might not allow to stand in the absence of valid reasons apparent in the judge's findings and rulings. *Bowring* v. *Reid*, 399 Mass. at 267.

2. *Contributions of the Parties.*

In any event, we must consider the fairness of the judgment within the confines of the broad discretion permitted the judge. *Pare* v. *Pare*, 409 Mass. at 296. While appropriately taking into account the original source of the assets to be divided and the parties' contributions to their acquisition, see *Tanner* v. *Tanner*, 14 Mass. App. Ct. 922, 923 (1982), the judge appears to have attached inordinate importance — especially in light of the length of the marriage — to allowing the husband to retain wealth which was derived from his parents, see *Bacon* v. *Bacon*, 26 Mass. App. Ct. 117, 123 (1988) (Kaplan, J., concurring). Moreover, the judge's focus on the genesis of the assets, and the absence of any findings or rationale which reasonably could be read as factoring the correlative value of the wife's long-term contributions as a homemaker into the decisional calculus are indicative of an unexplained turning away from the principle that "[t]he concept of property assignment or equitable division under G. L. c. 208, § 34, must be read to apply in a broad sense to the value of *all* contributions of the respective spouses towards the marital enterprise. . . ." *Putnam* v. *Putnam*, 5 Mass. App. Ct. 10, 17 (1977). "The underpinning of any order for division of property under § 34 is . . . the judge's consideration of the contributions, in the statutory terms, *of each spouse. . .*" (emphasis supplied). *Davidson* v. *Davidson*, 19 Mass. App. Ct. at 376. Once a judge gives weight to the discretionary statutory factor of spousal contributions, he is obliged to consider homemaking as well as financial efforts and to make apparent in his findings and rulings their effect, if any, upon his decision. The absence of significant advantage to either of the parties deriving from the findings relating to the other § 34 factors, coupled with the judge's unexplained uneven consideration of the contributions of each

spouse, render the disparate apportionment of assets plainly unfair and outside the realm of acceptable discretion. The fact that the judgment provisions may meet the wife's basic needs does not preclude assessment of the fairness of the division of the assets of this long-term marriage, given both the apparent failure to weigh the effect of the wife's contribution as a homemaker and the size of the marital estate, as enhanced by the husband's inheritance from his father. See *Rosenberg* v. *Rosenberg*, 33 Mass. App. Ct. 903, 904 (1992).

3. *Health Coverage.*

The health coverage provisions of § 34 are applicable to this case.[4] Once the judge ordered alimony on behalf of the wife,[5] he was obliged under those provisions to determine whether the husband had health insurance or other health coverage available to him through an employer or organization or whether such insurance or coverage was available to

---

[4]The last three sentences of § 34, inserted by St. 1988, c. 23, § 67, are as follows:

> "When the court makes an order for alimony on behalf of a spouse, said court shall determine whether the obligor under such order has health insurance or other health coverage available to him through an employer or organization or has health insurance or other health coverage available to him at reasonable cost that may be extended to cover the spouse for whom support is ordered. When said court has determined that the obligor has such insurance or coverage available to him, said court shall include in the support order a requirement that the obligor do one of the following: exercise the option of additional coverage in favor of the spouse, obtain coverage for the spouse, or reimburse the spouse for the cost of health insurance. In no event shall the order for alimony be reduced as a result of the obligor's cost for health insurance coverage for the spouse."

The amendment inserting these sentences went into effect on April 21, 1988. The complaint for divorce was dated August 25, 1988, and the judgment was entered on November 19, 1990.

[5]General Laws c. 208, § 17 (1990 ed.), provides in part that when a "court makes an order for alimony on behalf of a party, and such party is not a member of a private group health insurance plan, the court shall include in such order for alimony a provision relating to health insurance, which provision shall be in accordance with section thirty-four." We assume from the placement of this provision that it is applicable to temporary alimony orders entered during the pendency of a divorce action. See Kindregan & Inker, Family Law and Practice § 907 (1990).

the husband at reasonable cost and, in any event, whether the benefits of that insurance or coverage could be extended to the wife. Upon determination of the availability of such insurance or coverage, the judge was further obliged to include in the alimony order a requirement that the husband either exercise an available option of additional coverage in favor of the wife or obtain coverage for her or reimburse her for the cost of health insurance. Given these statutory requirements and the critical importance and expense of health insurance, a judge's findings and orders under § 34 expressly should reflect compliance with the statute and make provision for the requisite coverage or reimbursement.[6] The failure to make such findings and provisions in this case was error.

4. *Remand Order.*

We vacate the financial components of the divorce judgment and remand the case to the Probate Court for further proceedings consistent with this opinion, including, in the discretion of the judge, presentation of additional evidence. Upon remand, the judge shall consider the estate of the parties as including the husband's inheritance under his father's will. He shall also make additional findings of fact explaining the effect, if any, of the wife's contribution as a homemaker to the family unit upon any conclusions reached by him. He shall also make a determination and findings with respect to health insurance or other health coverage for the wife pursuant to the last three sentences of § 34. The wife is to have the costs of this appeal.

*So ordered.*

---

[6]We note that the husband in his financial statement filed with the Probate Court listed a weekly expense of $50 for "Blue Cross/Blue Shield" for himself, his wife and their son. If this reference was to a group plan, the provisions of G. L. c. 175, § 110I, G. L. c. 176A, § 8F, and G. L. c. 176B, § 6B, may continue the wife's eligibility for benefits without additional premium payments until the remarriage of either party unless the divorce judgment otherwise provides. See Kindregan & Inker, Family Law and Practice § 907 (1990).