DONALD D. BACON *vs.* CYNTHIA H. BACON.

No. 87-927.

Middlesex. April 14, 1988. — June 16, 1988.

Present: GREANEY, C.J., KAPLAN, & ARMSTRONG, JJ.

*Divorce and Separation,* Division of property.

In a divorce action, there was no error in the judge's equitable, rather than
an equal, division of property based on his appraisal of the parties'
contributions, entitlements and realistic needs, where the judge's written
findings indicated that he had fairly considered all factors relevant under
G. L. c. 208, § 34. [120-121]

In a divorce action, no abuse of discretion was shown in the judge's division
of property pursuant to G. L. c. 208, § 34. [121-122] KAPLAN, J.,
concurring.

COMPLAINT for divorce filed in the Middlesex Division of
the Probate and Family Court Department on September 4,
1984.

After review by this court, 23 Mass. App. Ct. 1000, further
proceedings were had before *James M. Sweeney,* J.

*Jacob M. Atwood* for the plaintiff.

*Edward J. Barshak* (*Alette E. Reed* with him) for the defend-
ant.

GREANEY, C.J. In *Bacon* v. *Bacon*, 23 Mass. App. Ct. 1000
(1987), we vacated the judgment in this divorce case insofar
as it concerned financial matters and remanded the case to the
probate judge so that he could articulate the rationale for his
division of property under G. L. c. 208, § 34.[1] See *Bowring*
v. *Reid*, 399 Mass. 265, 268 (1987). The property under con-
sideration for division consists principally of assets in the wife's
sole name, which had a value at the time of the divorce of

---

[1] On December 24, 1986, the judgment nisi was affirmed by this court
insofar as it granted the parties a divorce and made provision for custody
and visitation of the children.

$3,020,552, and the jointly owned marital home, which had an equity at that time of $865,621. The judge considered the parties' memoranda and entered an explanation of the theory underlying the division, which he did not change. Another judgment entered, which again ordered the husband to convey his interest in the marital home to the wife and ordered her to pay $200,000 to him[2] and $20,000 in attorney's fees to his counsel.[3] The judgment also ordered the wife to assume the college education expenses of the two children of the marriage.[4] The husband has appealed. We affirm.

The judge found that the assets to be distributed under G. L. c. 208, § 34, were assets acquired by the wife through gift or inheritance. He concerned himself basically with two issues: (1) the treatment of the assets in light of the factors set forth in G. L. c. 208, § 34, and especially the fact that the husband had contributed little to the marriage, and (2) the effect to be given to the parties' standard of living, which was influenced by the income derived from the wife's assets.

We reject the husband's arguments (phrased in a variety of ways) that we should set the property division aside and order a new division. The judge recognized that "[t]he underpinning of any order for division of property under § 34 is . . . consideration of the contributions, in the statutory terms, of each spouse, as well as other factors in existence at the dissolution of the partnership which have been traditionally applied in determining alimony." *Davidson* v. *Davidson*, 19 Mass. App. Ct. 364, 376 (1985), and authorities cited. See *Redding* v. *Redding*, 398 Mass. 102, 108-109 (1986). He was also cognizant of the principles that contributions to the marital partnership encompass differing considerations and that an imbalance in

---

[2] This payment apparently was designed to be tax-free to the husband.

[3] The judge stated that this payment would satisfy the bulk of the husband's obligations for counsel fees.

[4] In the divorce judgment, the wife was made responsible for the support of the children. She was also ordered to provide medical insurance for them and to pay all their uninsured medical and dental expenses.

contributions may have an effect on the distribution. As has been said of this point:

> "Disparity of contribution[s] within the marriage may be addressed by a close judicial examination of particular facts on the case presented. Such an examination should reveal whether the marriage has been a true partnership characterized by team effort, or whether the burdens have been unequally allocated. An imbalance in the assumption of responsibilities and burden[s] is an indication that one spouse has failed to contribute. The discretion to make an equitable rather than an equal division of property enables the trial judge to deal flexibly with the problem of imbalance . . . ."

Inker & Clower, Towards a New Justice in Marital Dissolution: The Massachusetts Statutory Scheme and Due Process Analysis, 16 Suffolk U.L. Rev. 907, 935-936 (1982). See *Savides* v. *Savides*, 400 Mass. 250, 252-253 (1987); *Heacock* v. *Heacock*, 402 Mass. 21, 24 (1988); *Putnam* v. *Putnam*, 5 Mass. App. Ct. 10, 15 (1977); *Davidson* v. *Davidson, supra* at 369-370. The judge was also faced with the fact of the wife's considerable wealth and the need to consider the husband's future ability to maintain a reasonable standard of living.

Based on the evidence which he deemed credible, the judge considered the following. Apart from the marital home, the wife had substantial assets as a result of property acquired for her benefit by her family prior to the marriage. At the time of the marriage, the wife was the beneficiary of a trust that provided her with income of about $20,000 a year. The trust terminated in 1973, and at that time the wife received distributions of approximately $500,000. From 1973 to the time of the divorce, the value of the assets increased greatly, primarily due to inflation and the fact that income and dividends were added to principal. Investment decisions were made for the most part on the advice of the wife's father. The husband played little role in the appreciation of the assets.

The same generally holds true for the marital home. That property was purchased with the wife's funds, and she paid for

most of the renovations to the property which cost about $200,000. Apart from inflation, the present value of the property, therefore, is due in large part to the wife's expenditure of her own funds.

The judge also considered these additional facts. At times, early in the marriage, the husband was abusive to the wife. The husband used the income that he earned during the marriage (when he was employed, which was not all the time) largely for his own purposes and basically relied upon the wife to support him. The husband, therefore, had the advantage of spending (and did spend) the income from the wife's assets during the marriage. The judge found that the husband took $34,000 from the family checking account when he left the marriage. The husband bears no significant responsibility for the financial support of the children of the marriage, which may include considerable college expenses. We note that the marriage was of medium length, the parties having lived together for twelve years.

As for the husband's needs, the judge considered that the husband presently has a position as an assistant dean for administration and planning at Harvard University which allows him to support himself adequately. (The husband's salary at the time of the divorce was $38,400.) The position carries retirement benefits. In addition, the husband has approximately $7,000 in annual interest income. By virtue of a position as a senior tutor, the husband also has a two-bedroom apartment in Eliot House at Harvard which he presently occupies rent free. The accommodations are adequate for the husband and were found by the childrens' guardian ad litem to be "entirely suitable and appropriate for raising [the children]."

"If a judge has made findings consistent with his obligations under G. L. c. 208, § 34 (*Rice* v. *Rice*, 372 Mass. 398, 402-403 [1977]), indicating that he has fairly considered all factors relevant under § 34 and has not considered any irrelevant matter, his determinations as to alimony and property division may not be reversed unless 'plainly wrong and excessive.'" *Redding* v. *Redding,* 398 Mass. at 107, and cases cited. The judge did not have to follow any specific formula, *Belsky* v.

*Belsky,* 9 Mass. App. Ct. 852, 853 (1980); *Downing* v. *Downing,* 12 Mass. App. Ct. 968, 969 (1981); *Caldwell* v. *Caldwell,* 17 Mass. App. Ct. 1032, 1032 (1984), and the weight to be accorded to each of the § 34 factors was committed to his discretion. See *Ross* v. *Ross,* 385 Mass. 30, 37 (1982); *Caldwell* v. *Caldwell,* 17 Mass. App. Ct. at 1032. The judge has complied with our order of remand. The financial orders reflect that the judge sought to make an equitable, rather than an equal, division which was based on the judge's appraisal of contributions, entitlements, and realistic needs.

There is the husband's contention that he has been made to suffer a substantial and unjustified reduction in his standard of living. We place no particular significance on the difference between the descriptions of the parties' standard of living contained in the judge's original findings (upper-class) and in his memorandum after remand (upper-middle-class). What defines that standard are facts which disclose the way in which the parties led their lives during the marriage and how they will be able to maintain their separate life-styles thereafter. As has been noted, at the time of the divorce, the husband was earning (and he still earns) a good salary, and he has adequate housing accommodations. He had been able to live on his own resources for three years, to enjoy travel with his children, to bring his adult daughter (from his first marriage) from Austria to visit with him, and to take trips and to make a loan to a friend. The husband has no financial responsibility for the expenses or education of the children.[5] His university position, and the intellectual milieu that accompanies it, remain. The judge found that the husband "is capable of providing . . . [an upper-middle-class station] for himself through his interest and employment income as well as his marital property settlement."

The husband has put forward an arguable claim to a larger share of the assets, particularly to more of the equity in the marital home.[6] Judges might reasonably differ on the issue of

[5] The husband will have expenses associated with the weekly visitation of the children.

[6] The judge also knew that he had the authority to assign the assets represented by the wife's separate property, see *Davidson* v. *Davidson,*

life-style, which has considerable bearing on the adequacy of a financial arrangement resulting from a divorce. See *Grubert* v. *Grubert*, 20 Mass. App. Ct. 811, 819 (1985), and cases cited. It cannot be said that the husband will be able to live in totally the same way on his present assets as he did with the security of over $3,000,000 and the income that sum can generate when prudently invested. That the marital estate, however, is rationally susceptible of a different allocation does not mean that the judge has abused his discretion, which under the decisions interpreting § 34 is quite broad; even if it is not limitless.[7] Finally, we note that the avenue of alimony is not irrevocably closed to the husband should an adverse material change in his circumstances occur.

*Judgment affirmed.*

KAPLAN, J. (concurring). I concur in the affirmance because I cannot say that the judge's decision was an abuse of his wide discretion under § 34. I believe I would have reached a different decision if I had been the trial judge. In my view the husband had a tenable claim to a substantially larger share in the division of assets. Take the issue of "standard of living" or "life-style." The couple's income was almost $250,000, including the husband's salary of $38,400. They jointly owned and lived in a house worth $865,000. Their habits of living over a period of twelve years evidently were commensurate with this affluence. By the judgment appealed from the husband gives up his interest in the house, receives $200,000 from the wife's $3,000,000 (not counting the house), and is remitted to his salary from a relatively low administrative post and the accompanying use of an apartment. The post is not tenured. The husband has physical custody of the children nearly half the time and has

---

19 Mass. App. Ct. at 371-374, but that he was not required to disregard blood lines and make such an assignment. *Id.* at 373.

[7] Although the *Grubert* decision applies to husbands as well as wives, we do not find sufficient parallels between this case and *Grubert*, which the husband relies upon, to set aside the award.

to meet the related expenses: he may be expected to strive not to be wholly outdone by the wife when it comes to providing recreation and travel for the children. Certainly the husband is not reduced to penury, but can it be fairly said that his security, and his sense of security, have not been radically and unduly altered? These are the deeper aspects of "life-style." The decision below may reflect too strongly a notion that inherited wealth should remain in blood lines. I question, also, whether the decision would have corresponded if all stayed the same except that the husband had the wealth and the wife the administrative job.