SHEILA A. HANDRAHAN vs. RICHARD P. HANDRAHAN.

No. 89-P-287.

Plymouth. November 10, 1989. - December 26, 1989.

Present: BROWN, CUTTER, & KASS, JJ.

*Divorce and Separation*, Division of property, Custody of child.

On appeal from that part of a divorce judgment requiring the former wife to pay her husband twenty-five percent of the equity value of the marital home, it was held that, in light of the husband's negligible contribution to the marriage on either an emotional or economic level and the dislocating effect which a forced sale of the house would produce, the judge erred in awarding the husband a portion of the equity in the marital home. [167-171] BROWN, J., concurring.

The judge in a divorce proceeding did not abuse his discretion in awarding visitation rights to the husband. [171]

COMPLAINT for divorce filed in the Plymouth Division of the Probate and Family Court Department on March 4, 1987.

The case was heard by *Jeremiah J. Sullivan*, J.

*Ailsa DePrada Deitemeyer* for Sheila A. Handrahan.

*Richard J. Ferriter* for Richard P. Handrahan.

KASS, J. On the basis of the findings made by the Probate Court judge, the appellant, Sheila A. Handrahan, argues that the judge committed clear error in requiring her to pay to her husband twenty-five percent of the equity value of the marital home. She is right, and we reverse the judgment on that score. On a visitation point which Sheila challenges, we affirm.

1. *The order relating to division of marital property.* Elaboration of the principles governing division of marital property and the standards of review is not necessary. We touch the headnotes. Under G. L. c. 208, § 34, a judge has considerable discretion in awarding alimony and distributing

marital property equitably. *Bianco* v. *Bianco,* 371 Mass. 420, 422-423 (1976). *Drapek* v. *Drapek,* 399 Mass. 240, 243 (1987). *Caldwell* v. *Caldwell,* 17 Mass. App. Ct. 1032 (1984). *Davidson* v. *Davidson,* 19 Mass. App. Ct. 364, 369, 371 (1985). What weight any of the factors in § 34 shall receive rests within the broad discretion of the judge. *Rice* v. *Rice,* 372 Mass. 398, 400-401 (1977). *Warman* v. *Warman,* 21 Mass. App. Ct. 80, 81 (1985). Mathematical precision is not required. *Downing* v. *Downing,* 12 Mass. App. Ct. 968, 969 (1981). Discretion of the trial judge, of course, is not unbounded. See *Putnam* v. *Putnam,* 5 Mass. App. Ct. 10, 15 (1977); *Grubert* v. *Grubert,* 20 Mass. App. Ct. 811, 817 (1985). Contribution and failure to contribute to the marital partnership should be considered. *Savides* v. *Savides,* 400 Mass. 250, 252-253 (1987). *Putnam* v. *Putnam, supra* at 17. *Davidson* v. *Davidson, supra* at 369-370. *Bacon* v. *Bacon,* 26 Mass. App. Ct. 117, 118-119 (1988).

Here the judge's findings adequately considered the relevant § 34 factors. See *Redding* v. *Redding,* 398 Mass. 102, 107-108 (1986). Those findings of fact have support in the record. The question is whether the findings can add up to the award made by the judge. *Id.* at 108. *Bowring* v. *Reid,* 399 Mass. 265, 267-268 (1987).

We turn to the facts found. Richard's alcohol abuse plagued the marriage from the start. He missed the wedding dinner because he had drunk himself sick. Unfortunately, the husband's drinking, which was frequent, was wont to degenerate into violence — verbal and physical. That violence was punctuated by use of knives, firearms, and a poker, all of which he used at various times in drunken rage to terrorize his wife and her children by a former marriage. In fury, for example, he choked his stepson and held a knife to his wife's throat. Orders under G. L. c. 209A to vacate the marital home were issued against the husband on several occasions. Richard's contribution to the domestic tranquility, it was safe to conclude, had been meager.

Sheila is a music teacher in a public school system. Together with some income from private music lessons, she had

an annual income of approximately $31,900. From his job as a dispatcher in the Scituate fire department and his part time earnings as a licensed electrician, Richard could expect annual income of about $26,650.

Sheila brought to the marriage a single family house, into which Richard moved. In December, 1977, after the Handrahans had been married eighteen months, Sheila sold her house and bought a new one. Of the approximately $21,750 required above the mortgage to acquire the new house, $18,750 came directly from the wife's funds. The balance was a $3,000 deposit which the wife paid from a joint savings account. The husband had made some contribution to that account. Sheila took sole title to the house, although Richard co-signed the mortgage note. As to the house Sheila had brought to the marriage and which was sold to provide money to buy the new one, Richard did painting, rewiring, and miscellaneous fix-up, worth about $3,600, to put the house in shape for sale. He also paid $400 to obtain the discharge of a lien on the old house.

During their ten-year marriage, Sheila's contribution to the total of the couple's living expenses was 75% of those expenses. With very little help from the husband, she took care of the children, including a third child born of the marriage with Richard. She did all the housework and cleaning, the cooking, and paid the bills. Although both parties assisted in the preservation and appreciation of the marital home, most of those two elements were contributed by Sheila. Richard's part involved landscaping work and the building of a dog pen.

There were three elements in the financial component of the amended divorce judgment: (1) $100 per week in support for the couple's minor child to be paid by the husband; (2) the husband to maintain a $100,000 life insurance policy for the benefit of the wife so long as he has a duty to support their child; (3) the wife to pay to the husband twenty-five percent of the equity in the marital domicil. As of the date of his order, the judge found the market value of the house to be $275,000. After subtracting the balance of the first mort-

gage and an equity loan, which the wife had taken out to meet living expenses, the equity stood at $205,000. Under the judge's order, the wife was required to pay $51,000 to her husband within ninety days, otherwise she was to sell the house and to pay to the husband twenty-five percent of the net proceeds.

It is apparent from Sheila's financial statement, which the judge accepted as factual, that she had no assets other than the real estate from which she might rally the necessary $51,000. Borrowing would, in the best of circumstances, impose a burden on her in the neighborhood of $475 per month, an insupportable additional burden on her gross income of approximately $2,650 per month. As a practical matter, the order concerning the marital domicil requires its sale and the introduction of additional instability into the life of the wife and the couple's minor child.

Sometimes such a consequence is unavoidable. Here, however, we have a history of minor economic contribution by the husband with no counterbalance in the form of noneconomic contribution. Rather, the husband's role was unsupportive and destructive. Over a ten-year period Sheila shouldered the economic and family responsibilities. Richard, the judge found, contributed $69,630.21 over that ten-year period (the amount includes sums previously mentioned) to the family enterprise. That comes to about $6,963 per year, hardly an excessive figure for roof and meals, and one which left a larger portion of his disposable income for his personal expenditures. In this case, to grant the husband a portion of the equity in the marital domicil is to allow him to profit from the increase of that value in the real estate simply because he was married to Sheila. See *Bacon* v. *Bacon*, 26 Mass. App. Ct. at 119-120.

Against the background of the negligible contribution of the husband to the marriage on either an emotional or economic level and the dislocating effect which a forced sale of the house would produce, we do not think that awarding the husband a portion of the equity in the marital domicil can be justified. It was error to have made such an award. Unlike

the circumstances in *Redding* v. *Redding*, 398 Mass. 102, and *Bowring* v. *Reid*, 399 Mass. at 268, we do not think further explanation by the trial judge is indicated. So much of the judgment as awarded part of the equity in the marital domicil to the husband should be struck.

2. *Visitation.* Richard, some years prior to the divorce trial, had sexually molested his stepdaughter and a friend of hers. There was no evidence of like conduct with his biological daughter. The wife contends that the combination of alcoholism and previous acts of sexual abuse were too threatening to warrant so much of the custody order as permits unsupervised overnight visitation. The judge expressly found that the daughter enjoyed a good relationship with her father and that visits had occurred which were unmarred by inappropriate conduct. The judge was faced with a difficult discretionary decision. We do not think he abused it.

The amended judgment of divorce shall be modified by striking therefrom that provision which requires the wife to pay to the husband twenty-five percent of the equity in the marital domicil. The judgment shall provide that the wife shall retain sole ownership of the marital domicil. The remainder of the judgment is affirmed.

*So ordered.*

BROWN, J. (concurring). Judicial decisions in the highly charged emotional area of divorce law almost certainly produce human pain. This area of law, in my view, more perhaps than any other, requires, in addition to able and sensitive professional conduct, wise counselling and a realistic evaluation of the long term economic consequences of the divorce judgment. With this preface, I think that decisions to take an appeal, or not to settle when an appeal is taken, must be made only after extremely careful, thorough, and candid consultations are conducted with one's client. For sure, the mutual animus of the parties should not be the propellant to the appellate level.

This is an area, as our opinion observes, where probate judges have broad discretion, and, although we are obliged to give deference to trial judges, we, of course, will not abdicate our review responsibility and will modify or reverse in those instances when the facts and law compel it, particularly, as here, where the decision is manifestly unfair or the award inequitable. Compare *Newman* v. *Newman*, 11 Mass. App. Ct. 903 (1981), and *Winternitz* v. *Winternitz*, 19 Mass. App. Ct. 228, 232-233 (1985), and authorities cited, with *Yee* v. *Yee*, 23 Mass. App. Ct. 483 (1987). This court, and all courts, should never "play a role in continuing and contributing to women's inferior economic and social status." Supreme Judicial Court, Gender Bias Study of the Court System in Massachusetts 19 (1989).