WILLIAM F. KEHOE *vs.* CONSTANCE D. KEHOE. No. 90-P-208. January 2, 1992. *Divorce and Separation*, Alimony.

Both sides in this protracted litigation, as before, lose no opportunity to dilate on the imperfections of the other. Scarcely anything in their mutual recrimination, however, is relevant to the question whether an alimony order of $14,300, to be paid in weekly installments of $275, is adequate in light of an income to the husband comfortably in excess of $100,000 per year and in light of the station in life of the parties during their marriage.

The appeal is from an amended judgment of divorce nisi entered in the Probate Court on September 18, 1987, after an order of remand from us dated December 11, 1985. That order was the culmination of our review of the original judgment of divorce nisi, entered August 1, 1983. During the course of the hearing on remand, the probate judge inquired carefully into the then current financial circumstances of the parties. Concerning allocation of their capital assets, the judge, who has displayed great patience and has made conscientious findings, acted within the broad bounds of his discretion. See *Rice* v. *Rice*, 372 Mass. 398, 400-401 (1977); *Warman* v. *Warman*, 21 Mass. App. Ct. 80, 81 (1985). As to straight alimony, however, the award, considering the husband's income, was below the bottom margin because it does not enable the wife to live at a standard approximating the economic station of the parties when married. See *Rice*

v. *Rice*, 372 Mass. at 402; *Zildjian* v. *Zildjian*, 8 Mass. App. Ct. 1, 14 (1979); *Grubert* v. *Grubert*, 20 Mass. App. Ct. 811, 819 (1985).

It is the fundamental purpose of alimony "to provide economic support to the dependent spouse." *Gottsegen* v. *Gottsegen*, 397 Mass. 617, 623 (1986). Among the considerations which establish the measure of support are the length of the marriage and the manner in which the parties, when married, had lived. *Grubert* v. *Grubert*, 20 Mass. App. Ct. at 819. *Goldman* v. *Goldman*, 28 Mass. App. Ct. 603, 611 (1990). During their marriage of twenty-three and one-half years, the Kehoes had attained a modestly affluent life-style, i.e., summer and winter vacations away from home, travel to foreign countries, and private schools for their children. Of course the economic capacity of the parties to maintain their former life-style is an inescapable factor. Here, the husband had become a partner in a well-established and large Boston law firm. He was the source of income for the family unit, which included two children. Although highly educated (in addition to an A.B., she had acquired two master's degrees and a Ph.D.), the wife, at the time of the hearing after remand (1987), had earnings only in the $112 to $146 per week range from part-time teaching and work as a sales clerk in a photography store. For his part, the husband had gross earnings of $140,000 for the fiscal year (of his law firm) ending February 28, 1987, and this reflected an ascending income curve for the 1980's. We may take judicial notice that in the meantime the law firm in which the husband was a partner has dissolved. There needs to be an inquiry about his current earning capacity.

As such, $14,300 per year is insufficient, even for a person living alone (the children have grown up and are out of the household), to live in a style approaching that which the Kehoes enjoyed when married, nor does it appear to reflect the contribution which the husband could reasonably be called upon to make. Enabling the dependent spouse to live at a standard "comparable to the one enjoyed during the marriage" is the standard of need for setting alimony. *Grubert* v. *Grubert*, 20 Mass. App. Ct. at 819. In rationalizing the alimony award, the probate judge considered the possibility of an income stream from the real estate in which Constance Kehoe lived and her ability to earn more money on her own.

Constance Kehoe continues to live in what had been the marital residence, a house in Medford, which her parents had bought as a two-family. After the departure (they have since died) of the parents, the Kehoes had broken through a wall and used the place as a single-family house. The bathroom and kitchen facilities for the separate units had, however, been retained. An appraiser had testified at the hearing after remand that, with an expenditure of about $8,500, the two-family use could be restored and rented for a monthly gross rent of $620. Taking into account debt service on the cost of improvements, insurance, repairs, and taxes, one could not assume more than about $400 per month in net income from rent, a total of $4,800 per year. In allocating the capital assets of the parties, the judge

awarded the Medford house to the wife and such income stream as is available from that property would flow to the wife.

So far as Constance Kehoe's earning capacity was concerned, the judge found that her high level of academic achievement should enable her to earn a salary in the $16,000 to $30,000 range. Yet she had not been steadily employed since 1971. She is now fifty-seven years old, with a discouraging employment background. The record reflects that she is not an easy, upbeat person. She seems obsessed with her divorce litigation, which she manages without counsel; that is regrettable and unproductive, but it is a reality. The prospects of the wife in the job market are less than her academic qualifications might suggest. Although it is appropriate for a judge to consider potential, rather than actual, earnings of a spouse, *Schuler* v. *Schuler*, 382 Mass. 366, 374 (1981), ascribing to the wife the income that her education ought to bring may be discordant with reality.

If one adds $14,300 (alimony) and $4,800 (rental income), the resulting $19,100 does not support an upper middle class life-style. A yardstick against which that figure may be measured is that in 1986, the median income for a one-person household with discretionary income was $34,224. See U.S. Bureau of the Census, Statistical Abstract of the United States: 1991 at 453 (111th ed.). Thus, even if one takes into account $7,500 in earnings by the wife (based on her earnings at the time of the hearing on remand) and the obligation of the husband to provide health insurance under his law firm's group policy, to the extent available for a divorced spouse,[1] the aggregate income seems short of statistical norms. We are not unmindful that the husband has expenditures on behalf of his daughter, whose college education is not yet complete, and may have some financial responsibilities on behalf of his son, who, while in his latter-twenties, has been slow to arrive at the point where he lives independently. Nevertheless, we are of opinion that unless the husband's financial picture has greatly deteriorated, the alimony is markedly short of the objective of providing support to the dependent spouse which enables her to maintain a standard of living roughly comparable to that attained in a long marriage. Setting the precise amount is properly the function of the probate judge, acting on the basis of current income information. Reluctant as we are to protract proceedings in this seemingly endless litigation, we remand the case for reexamination of the alimony award in light of this opinion. Counsel for the husband represented at argument that the wife has since the judgment here appealed from filed a complaint for modification. As a practical matter, the proceedings on remand may moot that modification proceeding because the reexamination of the alimony award may alter the judgment. If either party claims a substantial change in circumstances, that would be relevant to the alimony question to be reexamined.

---

[1] We do not know if, because of the dissolution of his old law firm, such coverage is available to the husband in his current practice situation.

*So ordered.*

*Constance D. Kehoe,* pro se.
*Jacob M. Atwood* for William F. Kehoe.

