JOHN P. DENNINGER *vs.* VICTORIA C. DENNINGER.

No. 92-P-577.

Suffolk. December 11, 1992. - May 3, 1993.

Present: KASS, FINE, & PORADA, JJ.

*Divorce and Separation*, Division of property.

Statement concerning a trial judge's obligations under G. L. c. 208, § 34, in determining a fair division of marital assets, and an appellate court's ·duty on review of a judgment pursuant to that statute. [430-431]
On appeal from a judgment of divorce awarding the husband fifteen percent of the marital assets of the parties, this court concluded that, in the circumstances, the judge gave excessive weight to the original source of the assets of the parties' twenty-seven year long marriage and failed to allocate assets in such fashion as would enable each party to sustain an approximation of the living standard each enjoyed while married to the other. [433-435]

COMPLAINT for divorce filed in the Suffolk Division of the Probate and Family Court Department on December 29, 1989.

The case was heard by *Edward W. Farrell*, J.

*Roberta F. Benjamin* for the plaintiff.

*James R. DeGiacomo* (*Joan P. Armstrong* with him) for the defendant.

KASS, J. At the time of the trial of their divorce action,[1] the marital estate of the parties came to $1,139,150.[2] In his order under G. L. c. 208, § 34, a judge of the Probate Court allocated $170,872 to the husband, an amount the judge arrived at by deciding to award the husband fifteen

---

[1]John P. Denninger, the husband, filed the complaint and his wife, Victoria C. Denninger, acknowledged breakdown of the marriage in her answer.

[2]We have rounded off dollar amounts in this opinion to the nearest whole dollar.

percent of the marital assets of the couple. On appeal, the husband argues that this division is so inconsistent with the judge's findings under § 34 that it is insupportable as matter of law. See *Bowring* v. *Reid*, 399 Mass. 265, 267-268 (1987). We decide that the judge gave excessive weight to the original source of the assets of this long term (twenty-seven years) marriage and failed to allocate assets in such fashion as would enable each party to sustain an approximation of the living standard each enjoyed while married to the other. See *Grubert* v. *Grubert*, 20 Mass. App. Ct. 811, 819 (1985).

Before stating the salient facts of the controversy, it may be useful to rehearse the familiar legal principles which courts apply to a case of this kind. First among these is that a probate judge acting under G. L. c. 208, § 34, has broad discretion to assign assets. *Rice* v. *Rice*, 372 Mass. 398, 401 (1977). *Davidson* v. *Davidson*, 19 Mass. App. Ct. 364, 371 (1985). If the judge has made the obligatory findings under· § 34 and "has not considered any irrelevant matter, his determinations as to alimony and property division may not be reversed unless 'plainly wrong and excessive.' " *Redding* v. *Redding*, 398 Mass. 102, 107-108 (1986). *Bowring* v. *Reid*, 399 Mass. at 267. *Bacon* v. *Bacon*, 26 Mass. App. Ct. 117, 120 (1988). What weight any of the § 34 factors shall receive "rests within the broad discretion of the judge." *Handrahan* v. *Handrahan*, 28 Mass. App. Ct. 167, 168 (1989). Mathematical precision is not the test. *Ibid.* Contribution to the marital enterprise is a factor to be taken into account in what is a fair division of assets. *Bacon* v. *Bacon*, 26 Mass. App. Ct. at 118-119. *Comins* v. *Comins*, 33 Mass. App. Ct. 28, 32-33 (1992), and cases there cited. Among the objectives of a financial award is providing means, to the extent the marital assets allow, which enable the parties to approximate the standard of living enjoyed during marriage. *Grubert* v. *Grubert*, 20 Mass. App. Ct. at 819. See *Kehoe* v. *Kehoe*, 31 Mass. App. Ct. 958, 959 (1992).

Considerable as the trial judge's discretion may be in weighing these factors, it is not unbounded. *Putnam* v. *Putnam*, 5 Mass. App. Ct. 10, 15 (1977). *Handrahan* v. *Han-*

*drahan,* 28 Mass. App. Ct. at 168. It is the duty of a review-
ing court to consider whether the apportionment of assets
flows rationally from the judge's findings under § 34. *Bow-
ring* v. *Reid,* 399 Mass. at 267-268.

We now turn to the facts found by the judge concerning
the Denningers' marriage of twenty-seven years. The hus-
band during most of that time worked as a commission sales-
man of financial services to institutions. Over the course of
the marriage, his earnings from that vocation ran between
$30,000 and $40,000 annually. That income went into a joint
bank account and was used for the support of the family.
Early in their marriage, the wife assisted her husband with
his financial newsletter and services business but, once their
two children were born (they are now both over twenty-one),
she devoted her life to raising the children and managing the
household.

Although the husband's earned income was modest, the
Denningers were able to live at an upper middle class level
thanks to generous support from the wife's family. She relied
on her father not only for money, but for financial advice and
decision making involving management of the household.
Whenever the wife needed anything material, whether a new
car or coat, private school tuition, camp fees, or college ex-
penses for the children, she requested and received the neces-
sary funds from her parents.

Around 1971, when the Denninger family moved from
New York to Boston, they first rented and then, with
$55,000 in help from the wife's father, bought an apartment
on Louisburg Square in Boston. In the ebullient market of
the 1970's and 1980's, that property rose to a value of
$543,000 at the time of trial. The Denningers were able to
borrow on their equity in the property and did so, once to
buy a summer place in Maine, used by the wife as a painting
studio, and on one or more other occasions to discharge
debts. Monthly payments on the equity loans were made by
the husband until, ultimately, the wife's father paid the bal-
ance of the loans entirely. As for vacations, the family was

able to sail on annual Caribbean cruises, financed by lectures the husband gave aboard ship.

During the marriage, the wife's father set up investment accounts in her name that, by the time of trial, exceeded $500,000. Those funds were managed by the wife's father, who reinvested the income they produced. From the mid-seventies forward, the husband paid from his income the taxes generated by earnings on the investment portfolio. Their lifestyle was a matter of some concern to the husband, who proposed moving to a suburb with a good public school system, where the family could live more modestly. The wife, however, enjoyed the Beacon Hill and private school setting and the resources from her parents made that choice of life-style possible.

At the time of the divorce, the husband was seventy-one years old and had suffered illness requiring surgery; the wife was fifty-five and, generally, in good health, although afflicted with asthma and bouts with alcoholism. Over time the husband had developed dietary preferences and nutrition supplement practices which could be characterized as eccentric.

After they separated, the husband's income came from his commissions and social security. In 1991, the year of the divorce judgment, the husband's aggregate income from those sources came to $34,496. By reason of his age and health, there were no prospects for increases in income and, indeed, a decline of earned income was to be expected. The husband had formed a relationship with a woman friend in Florida with whom he was able to share living and travel expenses, but there were no plans to marry. As for the wife's economic position, the father continued to meet her living expenses so that she did not need to draw on her capital assets or even her investment income. The wife was one of two siblings and she had expectations of an inheritance from her parents.

"[D]ay in and out for twenty plus years," the judge wrote in his findings, "the [husband] contributed all of the [husband's] financial resources to the family and . . . neither sought nor desired (nor indeed took personal advantage of)

the financial involvement of the [wife's] family." The judge thought it appropriate to make an award which would enable the husband to "live out the remainder of [his] life with some dignity and security." Both parties preferred not to deal with ongoing financial obligations such as alimony and desired to make a final financial settlement.

In light of these findings and objectives, the allocation made by the judge, $170,872 in assets to the husband, $968,278 to the wife, is off target. The living accommodation which the husband is able to use in the apartment of his bridge-playing companion is the product of an act of generosity rather than duty on the part of the companion. Her assistance is not bankable. The husband's ability to earn income is on a downward curve. There is no compulsion to achieve financial parity for parties to a divorce, *Bacon* v. *Bacon*, 26 Mass. App. Ct. at 121, but the comparison of the comfortable financial security of the wife with the fragile financial status of the husband is too stark to accept the apportionment of assets as conformable with cases which require an attempt to sustain the mode and level of living during the marriage. See *Zildjian* v. *Zildjian*, 8 Mass. App. Ct. 1, 14 (1979); *Grubert* v. *Grubert*, 20 Mass. App. Ct. at 819; *Bacon* v. *Bacon*, 26 Mass. App. Ct. at 121-122. Assuming a seven percent to eight percent return on investment, as might have been expected in 1991,[3] the income on the $170,872 awarded to the husband would be in the $12,000 to $13,700 range. Added to the husband's $12,896 of social security, the aggregate resources which the husband could depend on fall short of what in 1991 would support an upper middle class life-style. See *Kehoe* v. *Kehoe*, 31 Mass. App. Ct. at 960. Absent some good reason, the financial orders in a divorce judgment should not cause the standard of living of one spouse to drop perceptibly down while that of the other spouse remains high. *Goldman* v. *Goldman*, 28 Mass. App. Ct. 603, 611 (1990). Inker, Kindregan, Wagner & Boumil, Alimony and Assignment of Property: A Survey of the Last

---

[3] See Salomon Bros. Broad Investment-Grade Bond Index, January, 1991.

Decade of Massachusetts Law, 26 Suffolk U.L.Rev. 21, 43-44 (1992).

Comparison with *Bacon* v. *Bacon*, 26 Mass. App. Ct. at 120-122, in which we approved a meager award to the husband and the retention by the wife of inherited wealth, is instructive. There the husband used income he generated largely for his own purposes, *id.* at 120; he made no financial contribution to the marital enterprise, *ibid*; he spent income from his wife's assets, *ibid.*; and he had his own income of $38,400 in salary, approximately $7,000 in interest income, and the use of a two-bedroom apartment which went with his position at Harvard College. As to the significance to decision of the minimal contribution of the husband in *Bacon*, see Inker, Kindregan, Wagner, & Boumil, *supra* at 41. At that, one of the judges on the panel, in a concurring opinion, expressed concern that the decision of the probate judge might have reflected "too strongly a notion that inherited wealth should remain in blood lines." *Id.* at 123 (Kaplan, J., concurring).

The role of the husband in the Denninger marriage was considerably more contributing. It is difficult to understand why the husband should share so little of the run-up in value of the marital residence, the consequence of market factors, or of the investment portfolio, whose source was the wife's parents, but to whose growth the husband made at least some contribution by helping to pay taxes on the portfolio income. Contrast *Savides* v. *Savides*, 400 Mass. 250, 253 (1987). The respective shares, we say again, are less important than the financial circumstances in which those shares leave the parties.[4] In this case, we conclude, the husband is disadvantaged in a fashion which does not follow logically from the judge's findings. Section 34 is intended " 'to provide a mechanism whereby no matter how the property has been

---

[4] Conduct of the parties may bear on what constitutes an equitable distribution of property. *Johnson* v. *Johnson*, 22 Mass. App. Ct. 955, 956 (1986). Inker, Kindregan, Wagner & Boumil, 26 Suffolk U. L. Rev. at 38-39. The husband's dietary fetishes hardly resemble the abusive conduct given weight in the *Johnson* and *Handrahan* cases.

acquired or how it is held, the court can distribute it between the parties in such a way as to provide for a balanced disposition and economic justice.' " *Hay* v. *Cloutier*, 389 Mass. 248, 254 (1983), quoting Ginsburg, M. G. L. c. 208, § 34 — Some Observations About the Division of Property Leading to Predictability and Consistency, 25 B.B.J. No. 1, at 10 (1981).

We reverse the financial components of the divorce judgment and remand the case to the Probate Court for consideration of a division of property which will enable the parties to maintain a station in life which approximates that which was theirs during marriage.

*So ordered.*