HAROLD R. ROSENBLATT *vs.* MINDY KAZLOW-ROSENBLATT.

No. 94-P-217.

Norfolk. January 18, 1995. - October 4, 1995.

Present: BROWN, SMITH, & JACOBS, JJ.

Further appellate review granted, 421 Mass. 1106 (1995).

*Divorce and Separation*, Division of property, Attorney's fees, Alimony. *Contract*, Antenuptial agreement. *Husband and Wife*, Antenuptial agreement.

The record of a divorce proceeding supported the judge's findings that an antenuptial agreement was properly executed by the parties and that, as to the division of property thereunder, it was fair and reasonable both at the time of execution and at the time of divorce and further that the alimony waiver provision was not fair and reasonable at the time of execution or at the time of divorce and was invalid and unenforceable. [298-299]

In a divorce proceeding the judge, in awarding alimony to the wife, did not base her determination on the proper standard, viz., the way in which the parties led their lives during the marriage: the matter was remanded to the Probate Court for reconsideration of the issues of alimony and attorney's fees. [299-301]

CIVIL ACTION commenced in the Norfolk Division of the Probate and Family Court Department on May 22, 1992.

The case was heard by *Christina L. Harms*, J.

*William M. Levine* (*Charles J. Bowser, Jr.*, with him) for Mindy Kazlow-Rosenblatt.

*Anne L. Berger* for Harold R. Rosenblatt.

BROWN, J. This is an appeal by the wife from a judgment of divorce nisi. The central question is whether the antenuptial agreement between the parties was valid. In addition, the wife claims the judge abused her discretion by (1) limiting alimony to a lump sum amount of $78,000 and (2) by not awarding her counsel fees and expenses.

The wife and the husband were married on October 15, 1983. At the time of the marriage the wife was twenty-eight years old and worked as a physical therapist; the husband

was a physician. They had lived together for approximately one year before their marriage.

About one month before the wedding the husband informed the wife that he wanted the wife to execute a prenuptial agreement. The husband's attorney drafted the agreement which the husband showed the wife several days before they were to marry. The wife neither sought legal advice nor negotiated with the husband with regard to the agreement.

The husband signed the agreement in the presence of his attorney. On the night before they were scheduled to leave for New Jersey for the wedding, he presented it to the wife for her signature. He told the wife if she failed to sign the agreement he would not marry her. With the husband's mother as a witness, the wife signed the prenuptial agreement. Because the wife's signing of the agreement was not notarized, she, at the urging of her husband, signed it again several months after the wedding in the presence of a notary.

The couple remained married for ten years. They were separated twice within that period: once for about ten months and again, briefly, before the institution of the divorce proceeding. No children were born of the marriage.

1. *The agreement.* A properly executed antenuptial agreement will be binding between the parties as long as it was "fair and reasonable" at the time of execution and "fair and reasonable at the time of the judgment nisi." *Upham* v. *Upham*, 36 Mass. App. Ct. 295, 299-300 (1994). The Probate Court judge found that the agreement was properly executed and that as to the division of property it was fair and reasonable both at the time of execution and at the time of divorce. The judge determined, however, that the alimony waiver provision of the agreement was "not fair nor reasonable" either at the time of execution or at the time of divorce, and that that portion of the agreement was, therefore, invalid and unenforceable.

The record contains sufficient evidence to support the judge's findings. The crucial fact is that the wife voluntarily re-signed the agreement several months after the marriage

ceremony.[1] The record is devoid of evidence that would suggest fraud, misrepresentation, or undue duress.[2] Therefore, the judge's determination that the couple had a valid antenuptial agreement as to property division was not error.

2. *Alimony.* As the probate judge correctly stated: "There is no specific formula to be followed for an award of alimony; rather the court should consider all relevant factors and thereafter fashion a judgment appropriate to those factors." The judge based her decision to order a lump sum alimony payment on two alternative theories: (1) the "transition" theory and (2) the "compensation for home improvement efforts" theory. The purpose of the transition theory was "to phase out (or scale down) . . . the financial status she expected and enjoyed while married to her husband, and to return to being single and economically self-sufficient." The judge's rationale for an alimony award under the compensation theory was that the wife "deserve[d] some economic compensation for the substantial time and effort . . . that she put into the extensive renovations and improvements that the couple undertook upon the husband's house."[3] Under the transition theory the judge found that a lump sum of $78,000

---

[1] That she was presented with the agreement the night before they were to leave for the wedding would ordinarily raise suspicion; however, such uneasiness is diminished by her later re-signing of the document.

[2] The pertinent part of the judge's findings is set out below.

> "I find that (a) the wife was fully and fairly informed that she could and should consult with an attorney concerning the Antenuptial Agreement, but chose not to; (b) the Agreement fully and fairly discloses the assets of each party; (c) the wife fully and fairly understood the Agreement when she signed it; (d) the wife signed the Agreement voluntarily in the applicable legal sense of that term (that is, she understood that the document was important to the husband and that he probably would not marry her without it, she wanted to marry him, and she — although not happily — signed the document under those circumstances.) I find that there was no fraudulent concealment or misrepresentation of assets, nor any undue duress, when the Antenuptial Agreement was signed."

[3] The parties do not argue and we do not reach the propriety of an award under the judge's novel "compensation" theory. We doubt, however, that compensation for services performed during the marriage is a valid basis for an alimony award for present support.

would be appropriate and that under the compensation the-
ory the award would be $57,000. After accounting for the
tax implications involved in the award under each theory, she
determined that the amounts were approximately the same.
The judgment ultimately entered provided for a lump sum
payment of $78,000 under the transition theory.

Although the judge appropriately considered all the G. L.
c. 208, § 34, factors, she applied the incorrect legal standard
when determining the amount of alimony to grant to the
wife. When resolving alimony disputes, "[t]he standard of
need is measured by the 'station' of the parties — by what is
required to maintain a standard of living comparable to the
one enjoyed *during* the marriage" (emphasis supplied). *Gru-
bert* v. *Grubert*, 20 Mass. App. Ct. 811, 819 (1985). See also
*Kehoe* v. *Kehoe*, 31 Mass. App. Ct. 958, 958-959 (1992),
and cases cited. Here, the judge departed from the tradi-
tional standard used to determine an award of alimony. In-
stead, she awarded a lump sum of money under her "transi-
tion" theory, the intended effect of which was to cause the
wife to scale down her life-style from that which she enjoyed
while married. She reasoned that, because this was a short to
medium length, childless marriage, it made more sense, in
this case, to restore the parties to "their status quo ante."[4]

In support of her ruling the judge relied on two cases —
*Bacon* v. *Bacon*, 26 Mass. App. Ct. 117 (1988), and *Putnam*
v. *Putnam*, 5 Mass. App. Ct. 10, 14-16 (1977); each can be
distinguished from the case at bar.

In *Bacon*, this court affirmed the lower court's property di-
vision award (alimony was not an issue) based on the probate
judge's finding that the husband was capable of providing a
life-style comparable to that which he had become accus-

---

[4]In her conclusions of law the judge wrote:

"Alimony is not necessarily required when both parties are self sup-
porting and able to provide for themselves in a fashion reasonably
equivalent to what they had established for themselves *prior* to the
marriage. . . . Restoration of the parties to their *status quo ante*
often makes eminent sense in childless marriages of short or medium
duration." (Emphasis supplied.)

tomed to during the marriage. The court made no comment on a need to restore the parties to their status quo ante. In fact, the *Bacon* court specifically applied the proper standard in defining the parties' standard of living: "the way in which the parties led their lives *during the marriage*" (emphasis supplied). *Bacon* v. *Bacon, supra* at 121.

*Putnam* v. *Putnam, supra,* similarly concerns only the division of marital property, not the award of alimony. The "status quo ante" discussed in that case concerned only the disposition of marital property, and the court specifically noted that alimony should be treated differently. *Id.* at 14-15 & n.6. With regard to alimony, the court stated:

> "The findings do not make out a case for alimony; the husband is not shown to be in need of support; we are told of no resources or debts of the parties not already mentioned; and the earning capacity of the husband appears to be substantially in excess of the wife's." *Id.* at 16.

Contrary to the husband's arguments, the court's language does not suggest that in short-term marriages the parties' standard of need is to be measured by their financial status prior to the marriage.

The judge should have applied the *Grubert* standard to determine the wife's alimony award. Accordingly, the alimony provision of the judgment is vacated, and this case is remanded to the Probate Court for reconsideration of the alimony issue.[5] Upon reconsideration, the wife's standard of need is to be measured by the standard of living she enjoyed during the marriage.

*So ordered.*

---

[5]Because alimony and attorney's fees are closely related, on remand, the court should also reconsider the issue of attorney's fees. See *Grubert* v. *Grubert*, 20 Mass. App. Ct. at 819.