JEFFREY FRANK WOLCOTT vs. DONNA MARGUERITE WOLCOTT.

No. 09-P-1446.

Hampden. September 16, 2010. - January 6, 2011.

Present: LENK, KAFKER, & MILLS, JJ.

*Divorce and Separation,* Division of property, Attorney's fees.

In a divorce proceeding, the Probate and Family Court judge, in awarding the husband what amounted to ninety percent of the marital estate, did not err in considering the effect that the wife's solicitation of the husband's murder had on the emotional health of the marriage and family, where the judge did not base his award purely on the basis of the blameworthy conduct, but considered the parties' respective contributions to the marital partnership; further, the judge did not abuse his discretion in making the disproportionate award, which followed logically from the judge's findings; finally, the judge did not abuse his discretion in failing to award the wife certain antique furniture or jewelry. [542-546]

In a divorce proceeding, the Probate and Family Court judge did not abuse his discretion in failing to award the wife additional attorney's fees. [546-547]

COMPLAINT for divorce filed in the Hampden Division of the Probate and Family Court Department on March 31, 2006.

The case was heard by *David G. Sacks,* J.

*Michael J. Fellows* for Donna Marguerite Wolcott.

*Claudine T. Wyner* for Jeffrey Frank Wolcott.

LENK, J. The wife, Donna Wolcott, appeals from that portion of the parties' divorce judgment that divides the marital assets, essentially arguing that the judge abused his discretion in awarding the husband, Jeffrey Wolcott, what amounts to ninety percent of the marital estate. She also appeals from the judge's denial of her request for attorney's fees. We affirm.

*Background.* What follows are the relevant facts on appeal, drawn from the judge's findings and supported by evidence that the judge deemed credible.

The husband and wife were married in October of 1995. They are the parents of two sons, the first born on January 7, 1999, and the second on March 24, 2000.[1] For the first few years of their marriage, the wife worked at a bank, earning around $20,000 annually. After the birth of their first child, the wife stopped working in order to care for the children. At the time of the divorce proceeding, she was once again employed at a bank, earning around $450 per week. The husband has worked throughout the marriage and was earning around $1,900 per week at the time of trial. The marital home has an agreed-upon value of $440,000.

The judge heard testimony, which he credited, about several unusual incidents that took place in 2006. The wife's former coworker, Jill Scibelli, testified as to a conversation she had with the wife on February 23, 2006, during which the wife indicated she was unhappy with her husband and asked if Scibelli's husband could "take care of a problem" for her by "get[ting] rid of something." When Scibelli responded that her husband was simply a chef and could not help with that sort of "problem," the wife asked Scibelli if her husband was related to someone who could help. The judge found that Scibelli believed the wife was seeking assistance in having the husband killed.

Both parties testified about an incident that occurred on March 3 and 4, 2006, with the judge largely crediting the husband's testimony about this and other matters. The husband and wife had traveled to Texas on holiday with their children. They rented a houseboat, where they planned to stay for three days while other family members cared for the children. The husband had been ill for several days and had not consumed much food. Although he had been abstaining from alcohol for several years, the wife made alcoholic beverages for them both to drink on the houseboat, and the husband consumed them willingly.

At a certain point, the wife went below deck and the husband was left alone above deck. The husband next remembers standing on the lower deck near the cabin entrance, feeling cold and wet. The husband then found himself in the water, where he had to swim one mile to shore and walk for several hours before he

---

[1]The wife does not challenge those parts of the divorce judgment awarding the husband sole physical and legal custody of the children.

found help. Although the husband testified that he felt a hand push him from the boat, the judge found it as likely that he had fallen from both decks, due to his weakened condition. The judge found that the wife bore responsibility for encouraging his unwise consumption of alcohol.

The husband suffered severe injuries from the fall, including a broken nose, upper jaw, and right wrist; four broken teeth; and a "blown out" knee. He was initially treated in a Texas hospital but returned to Massachusetts on March 9, 2006. Upon return from Texas, but before his corrective surgery, the husband slept on the couch because the sound of his breathing bothered the wife. Shortly thereafter, the wife asked him to move out of the family home altogether. Because the husband was still recovering from his injuries and on pain medication, he had difficulty transporting himself from the family home (where he would spend his days) to his mother's home (where he slept). The judge credited the husband's testimony that he would have preferred to stay at the family home during recovery.

The wife's cousin, John Jamroz, also testified credibly at the divorce proceeding regarding a conversation he had with the wife on March 11, 2006, days after the parties had returned from Texas. Specifically, Jamroz testified that the wife had approached him and told him she did not want to be married and she wanted her husband to "disappear." She asked Jamroz if he knew anyone in the "Mafia" or anyone who needed money, and said she wanted something done permanently. Jamroz went to the State police and reported this incident, and criminal charges were eventually brought against the wife. On June 29, 2007, a jury convicted the wife of solicitation to commit murder,[2] and she served three months in a house of correction before being released on parole.[3,4]

The judge made several other findings that are relevant to the

[2]She was also convicted of violating two G. L. c. 209A restraining orders the husband had obtained against her after Jamroz went to the police.

[3]The conversation with Scibelli was also brought out in the criminal proceeding against the wife.

[4]The divorce trial in this case was held in November and December of 2008. On August 25, 2010, the wife's solicitation conviction was reversed by this court and the case was remanded for a new trial. Reversal was based on the trial judge's failure to keep the courtroom open to the public, in violation

parties' conduct and contribution to the marriage. The judge credited testimony from Guy Dionne, who acknowledged having had a sexual affair with the wife for several weeks in the fall of 2005. The judge also found that the wife had pursued a foolhardy landscaping plan for the marital home in the late 1990s, which violated town regulations and cost the parties $14,000 to remedy.[5] The wife incurred around $24,000 in medical bills for plastic surgery procedures during the marriage, to which the husband acquiesced but which he did not believe were necessary.[6] The judge found that the wife was responsible for the care of the children during the day, as well as the majority of the running of the household (cooking, cleaning, shopping, laundry, lawn care, and bill paying). However, the husband took over child care duties at night when he returned from work, including caring for the children if they woke in the middle of the night. The husband is now solely responsible for child care and maintenance of the marital home.

*Discussion.* 1. *Distribution of assets.* When dividing the marital estate, "a judge must make findings indicating that he has considered all factors relevant under [G. L. c. 208,] § 34, and has not considered any irrelevant factors."[7] *Bowring* v. *Reid*, 399 Mass. 265, 267 (1987). In this case, the judge addressed

of the wife's rights under the Sixth Amendment to the United States Constitution. See *Commonwealth* v. *Wolcott*, 77 Mass. App. Ct. 457, 459-465 (2010).

[5]The husband testified on cross-examination that the wife wanted a flat back yard, and that she independently "hired people" to cut down trees on their property and fill the property in with loam, despite the fact that the husband "warned her" not to do so and told her that "you are going to have to pay for it because, you know, you shouldn't be doing it because it's right here in the law." The husband said she "went ahead and did it" despite his protests.

[6]The husband testified that he was not part of the "decision process" regarding the wife's plastic surgeries, that he "objected" to them, but that he "supported her decision" to get plastic surgery. The husband also noted that he knew the "generalities" about the expenditures, but as he was not "the keeper of the checkbook," he did not know the "total amount" she had spent from their joint account on plastic surgery.

[7]The relevant factors include "the length of the marriage, the conduct of the parties during the marriage, the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate, liabilities and needs of each of the parties and the opportunity of each for future acquisition of capital assets and income. . . . [T]he court shall also consider the present and future needs of the dependent children of the marriage. The court may also

each required § 34 factor within his 114 findings of fact,[8] and the wife's argument to the contrary is without merit. However, we do pause to consider the wife's argument that the judge abused his discretion by giving undue weight to her criminal conviction.

The judge had broad discretion as to the division of property, *Kittredge* v. *Kittredge*, 441 Mass. 28, 43-44 (2004), and we will only disturb his rulings if they are plainly wrong and excessive. *Redding* v. *Redding*, 398 Mass. 102, 107 (1986). In support of her argument that the judge abused his broad discretion, the wife points both to the disproportionate distribution of assets as well as to the judge's statement that the "conviction of a spouse of the crime of soliciting the murder of the other spouse" was "exceptional" conduct that shocked the conscience of the court and would "have an impact on the 'conduct' factor under [§ 34] irrespective of 'economic impact.' "

" 'Conduct' that has harmed the *marriage or the marital estate* may be viewed negatively, and considered as a factor that would diminish that spouse's equitable share of marital property"; however, "[a]n equitable division of marital property" is not intended "to punish 'bad' behavior or enforce the criminal laws" (emphasis supplied). *Kittredge* v. *Kittredge*, 441 Mass. at 38. In this case, while the judge's harsh tone regarding the wife's criminal conviction may have been unnecessary to resolve the division of marital assets, it is nonetheless clear from his award and findings that he gave appropriate weight to each § 34 factor, including the wife's egregious conduct.

Although this case is highly unusual due to the gravity of the marital misconduct involved, we cannot say the judge erred in considering the effect that the wife's bad actions had on the emotional health of the marriage and family. Consideration of much less egregious conduct under § 34 has been approved.

consider the contribution of each of the parties in the acquisition, preservation or appreciation in value of their respective estates and the contribution of each of the parties as a homemaker to the family unit." G. L. c. 208, § 34, as amended by St. 1989, c. 559.

[8]The wife argues that several of the judge's findings of fact are erroneous and demonstrate the judge's prejudice against the wife. We conclude that the judge's findings are largely supported by the evidence and any small discrepancies are harmless. See *Williams* v. *Massa*, 431 Mass. 619, 631 (2000) ("[T]he mistakes are not of material significance because they do not alter the larger picture of the marriage").

See *Ross* v. *Ross*, 385 Mass. 30, 36-37 (1982) (argument that "the judge placed too much emphasis on the husband's conduct during the marriage," including his extramarital affair, was not meritorious because weight given each § 34 factor is "merely an aspect of the exercise of [the judge's] broad discretion in the distribution of the property"); *Warman* v. *Warman*, 21 Mass. App. Ct. 80, 81 (1985) (rejecting wife's assertion that "any alleged moral failing on her part was unwarrantably measured"); *Johnson* v. *Johnson*, 22 Mass. App. Ct. 955, 956 (1986) (judge properly considered "husband's abusive conduct, both physical and mental"); *Bacon* v. *Bacon*, 26 Mass. App. Ct. 117, 120 (1988) (judgment affirmed where judge considered fact that "[a]t times, early in the marriage, the husband was abusive to the wife"); *Handrahan* v. *Handrahan*, 28 Mass. App. Ct. 167, 170 (1989) (appropriate to consider "negligible contribution of the husband to the marriage on either an emotional or economic level"); *Ruml* v. *Ruml*, 50 Mass. App. Ct. 500, 510 & n.16 (2000) (challenge to disproportionate division would have been fruitless where, in part, "[t]he judge concluded . . . that there should be an unequal distribution of assets, because the husband had financially and emotionally abandoned his family" [footnote omitted]).[9]

Moreover, the judge did not consider the wife's misconduct solely for its negative emotional impact on the marriage. Specifically, the judge noted that the wife's effort to have her husband murdered — about which the judge heard live testimony, rather than simply relying on the fact of her conviction — "caused [the husband] to take on total responsibility for the children's care"; "makes [the husband] totally responsible for maintaining the parties' home"; and will "always" adversely affect the husband as it "diminishes his ability to be totally focused on life and work issues." Along with the wife's responsibility for the misguided $14,000 land use expenditure, these were the factors that the judge considered "primary." The judge explained

---

[9]The wife urges this court to give weight to several out-of-State cases that address criminal conduct within the context of divorce. See, e.g., *Mosbarger* v. *Mosbarger*, 547 So. 2d 188 (Fla. 1989); *D'Arc* v. *D'Arc*, 164 N.J. Super. 226 (1978); *Brancoveanu* v. *Brancoveanu*, 145 A.D.2d 395 (N.Y. 1988). Because these cases construe statutes dissimilar in material respects to G. L. c. 208, § 34, and accordingly have limited persuasive value, we decline to do so.

that the husband is now the sole caregiver and homemaker because of the wife's conduct: her murderous impulse made it best "to terminate all future economic and personal dealings between the parties." (The judge here quoted from Kindregan & Inker, Family Law & Practice § 40:7, at 26 [3d ed. 2002], citing *Rolde* v. *Rolde,* 12 Mass. App. Ct. 398 [1981]). Thus, this is not a case where the judge has failed "to consider and explain the effect of an important fact." *Redding* v. *Redding,* 398 Mass. at 108.

Although the judge did give much weight to the wife's misconduct, this is also not a case in which the award was based "purely on the basis of the blameworthy conduct of one of the spouses." *Putnam* v. *Putnam,* 5 Mass. App. Ct. 10, 16 (1977). The judge considered "[t]he parties' respective contributions to the marital partnership," *Moriarty* v. *Stone,* 41 Mass. App. Ct. 151, 157 (1996), including the wife's role as a homemaker during the day and the husband's responsibility for child care after work. The judge also considered the wife's responsibility for the husband's facial injuries, her callousness during his recovery, her plastic surgery expenditures, the cost associated with her poor landscaping decision, the length of the marriage, and the fact that neither spouse had any significant outstanding debts.

Neither does the disproportionate division of assets necessarily indicate, as the wife argues, that the division is inequitable. See *Williams* v. *Massa,* 431 Mass. 619, 632 (2000), quoting from *Bacon* v. *Bacon,* 26 Mass. App. Ct. at 118-119 ("[A]n imbalance in contributions may have an effect on the distribution"). Section 34 allows that the judge "may assign to either husband or wife all or any part of the estate of the other, including but not limited to, . . . rights and funds accrued during the marriage . . . ." G. L. c. 208, § 34, as amended by St. 1990, c. 467. We are mindful that "[a]mong the objectives of a financial award is providing means, to the extent the marital assets allow, which enable the parties to approximate the standard of living enjoyed during marriage." *Denninger* v. *Denninger,* 34 Mass. App. Ct. 429, 430 (1993). However, we have affirmed a division of property which left one spouse unable "to live in totally the same way on his present assets" as he did during the marriage. *Bacon* v. *Bacon,* 26 Mass. App. Ct. at 122.

Here, the judge recognized that the wife is in "an unenviable financial position," but again explained that her position is a result of her own negative contributions to the marriage (in this case, criminal conduct by which she sought to "unlawfully terminate the marital partnership," and "waste relative to the land use issue"). The wife is employed and able to support herself on her salary,[10] while the husband must, because of the wife's egregious acts, meet virtually all the needs of himself and the children. Irrespective of whether we might have applied the same calculus, this disproportionate award does "follow logically from the judge's findings," and therefore we cannot say it is an abuse of the judge's broad discretion. *Denninger* v. *Denninger*, 34 Mass. App. Ct. at 434 & n.4 (disproportionate award of assets to wife not equitable where, among other things, the husband's conduct "hardly resemble[s] the abusive conduct given weight in [*Johnson* v. *Johnson*, *supra*, and *Handrahan* v. *Handrahan*, *supra*]").

Lastly, the judge did not err, as the wife asserts, by failing to award the wife any antique furniture from the home or the jewelry the wife claims is in the husband's possession (but about which there was no trial testimony). "A judge has broad discretion in dealing with the division of property incident to a divorce, including items of a personal nature," and the judge's failure to award the wife any furniture or jewelry here was not "plainly wrong." *Ruml* v. *Ruml*, 50 Mass. App. Ct. at 514 (judge was not plainly wrong in failing to award husband "his personal property, including clothes, shoes, and diplomas").

2. *Attorney's fees.* The wife complains that the judge's failure to award her additional attorney's fees was an abuse of his discretion. *Brooks* v. *Brooks*, 65 Mass. App. Ct. 129, 132 (2005) ("We will not disturb an order awarding attorney's fees except upon a showing of an abuse of that discretion"). A judge has broad discretion in awarding attorney's fees under G. L. c. 208, § 38, and, it follows, broad discretion to deny an award. *Ross*

---

[10]The wife is not reduced to circumstances akin to a public charge. Compare *Caccia* v. *Caccia*, 40 Mass. App. Ct. 376, 382 (1996). Moreover, the prospect of alimony is not foreclosed to the wife, should she in the future find herself in different circumstances. See *Kinosian* v. *Kinosian*, 351 Mass. 49, 52 (1966); *Talbot* v. *Talbot*, 13 Mass. App. Ct. 456, 460 (1982).

v. *Ross*, 385 Mass. at 39, quoting from *Smith* v. *Smith*, 361 Mass. 733, 738 (1972) (judge's award is "presumed to be right and ordinarily ought not to be disturbed").

Here, during the proceedings the wife received some $13,000 from the marital estate for her legal fees.[11] The wife points to no case, and we are aware of none, in which the failure to award attorney's fees, let alone additional attorney's fees, under G. L. c. 208, § 38, has constituted abuse of discretion. *Galluzzo* v. *Galluzzo*, 12 Mass. App. Ct. 890, 891 (1981) ("[T]he wife fails to direct our attention to authority to establish that the failure to award attorney's fees in a case such as this was an abuse of discretion"). Had the judgment included an additional award of attorney's fees to the husband or wife, findings as to the reasonableness of that award would be necessary, see *Robbins* v. *Robbins*, 19 Mass. App. Ct. 538 (1985), but it does not follow that, having established the reasonableness of her attorney's fees, the wife is entitled to receive an award. See *Drapek* v. *Drapek*, 399 Mass. 240, 248 (1987) ("[The wife] claims that she should have been awarded attorney's fee[s]. General Laws c. 208, § 38, allows the judge, in his discretion, to award counsel fees to either party in a divorce proceeding. . . . In the present case the judge acted within his discretion in declining to award the wife attorney's fees").

*Judgment affirmed.*

---

[11]The judge found that $7,500 of that amount went to the wife's "present successor attorney," Charles Sclafani. The record contains, however, an affidavit from Attorney Sclafani indicating that the $7,500 he received was paid by the wife's mother, from the mother's own funds. How the $13,000 awarded for fees was in fact expended is not explained. In any event, the wife has presented no compelling argument that this discrepancy regarding the source of Attorney Sclafani's payment renders the judge's decision not to award additional fees erroneous. See *Downey* v. *Downey*, 55 Mass. App. Ct. 812, 819 (2002).